Bryant, J.
The sole question for determination here is whether Denison University is entitled to exemption from real estate taxes for the 1961 tax year and to remission of taxes paid for the 1960 tax year, with respect to nine buildings located near the center of the university campus on land owned by the university, which buildings were erected and are maintained and operated by various college fraternities, subject to university supervision, under lease agreements with the university.
The leases of the American Commons Club, Phi Delta Theta, Sigma Chi, Kappa Sigma, Phi Gamma Delta, Beta Theta Pi, Lambda Chi Alpha and Sigma Alpha Epsilon are for terms of 99 years, renewable forever, whereas the Delta Upsilon lease is for a term of one year, renewable. Eight of the nine fraternity houses are occupied by the local or active chapters of national collegiate fraternities, the only exception being in the case of the American Commons Club which has no national affiliation.'
Because of the fact that title to the land has remained in the university, the financing of the cost of the fraternity houses has been participated in by the university under a variety of plans, with the cost of construction and all or a substantial part of the interest on loans being paid by the fraternities. The three witnesses for the university testified at considerable length as to the benefits to the university in exercising control over the student body by having the fraternity houses located on the campus.
Emphasis also was placed upon the facts that the leases require each fraternity to observe rules of conduct laid down by the xmiversity; that under the terms of the leases violations of the rules could result in a cancellation of the leases; that the university reserved the right to ban all fraternities from the campus, which would result in a cancellation of all fraternity leases; and that the nine fraternity houses provide dormitory facilities for a substantial number of male students and also provide them, both fraternity members and, to a smaller degree, *433 nonfraternity members, with dining-room facilities.
On behalf of the university, it was testified that, if the facilities for feeding and housing students provided by these fraternities were not available, the university would be obligated to expend a large sum of money to provide the equivalent in dormitory and dining-room service. We do not consider this an issue in the case for the reason, among others, that no one has suggested that the fraternities are planning to make any change in their operations, or that the Board of Tax Appeals could take this into account in determining the issues before it. It is noted, also, that in all or nearly all of the leases there is a provision that any taxes assessed against the fraternity houses shall be paid by the lessee-fraternities.
The entry of the Board of Tax Appeals rejecting the applications for tax exemption provides in part as follows:
“All of these [fraternity] buildings, with the exception of the Delta Upsilon house, were constructed and paid for by the lessee fraternity, and the ground leases provide that all taxes on any buildings located on the leased ground shall be paid by the fraternities.
“The pertinent portion of Revised Code Section 5709.12 is as follows:
“ * *. Real * * * property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.’
“This board has, in the past, granted tax exemption for buildings used as student dormitories, which buildings were owned and operated by privately owned universities and colleges, and which buildings were actually located on the university or college campus grounds. However, the matter now before this board does not concern dormitories, nor are the buildings used, owned or operated by the university, except the Delta Upsilon building, which is owned by the university but which is used and operated by the fraternity to the same extent as prevails in the other buildings.
“As noted above, these buildings are used as fraternity houses by the fraternities under leases from the university.”
After citing the case of National Headquarters Disabled American Veterans v. Bowers, Tax Commr. (1960), 171 Ohio St., 312, the board’s entry continues as follows:
*434 “The facts in this matter are clear. These buildings are operated under lease by fraternities for fraternity purposes, and but one of the many uses, for which the fraternities use these buildings, is that of providing lodging for fraternity members only. It may be true that Denison University exercises a closer control over the individual fraternity member because of the proximity of the school to the fraternity building; however, the evidence clearly shows that these fraternities have the same rights of use and control over their fraternity buildings as do their brother fraternities at other Ohio universities and colleges.
i ( * # #
“The evidence in the matter now before this board shows unquestionably that these fraternity houses were no more used exclusively for charitable purposes than was the structure involved in the Licking Aerie No. 387, F. O. E., case, supra [Wilson, Aud., v. Licking Aerie No. 387, F. O. E. (1922), 104 Ohio St., 137], or in the Disabled American Veterans case, supra, or in the many American Legion cases previously decided by this board and the courts. Any use of a building by a fraternal organization for its fraternal purposes would appear to preclude a u.se exclusively for charitable purposes.
“It is the finding of the Board of Tax Appeals that these buildings were not used exclusively for charitable purposes within the meaning of those words as used in the Ohio Constitution and in Revised Code Section 5709.12, and the applications for tax exemption for the year 1961, and for remission of taxes for the year 1960, are hereby denied.”
Section 5717.04, Revised Code, which authorizes appeals from decisions of the Board of Tax Appeals, requires that the notice of appeal “shall set forth the decision of the board appealed from and the errors therein complained of,” and, pursuant thereto, the university in its notice of appeal enumerated seven alleged errors in the decision by the board, the substance of which is that the decision of the board is erroneous in determining (1) that use of fraternity houses for fraternity purposes precludes use exclusively for charitable purposes, (2) that the buildings were leased for fraternal purposes, and lodging was only one of many uses by the paternities, (3) that *435 rights to use fraternity buildings by fraternities at Denison University were similar to those of fraternities at certain other colleges, (4) that eight of the fraternities used buildings located on university land which was leased to the fraternities under 99-year leases, renewable forever, (5) that the question of the exemption of school dormitories was not involved, (6) that the fraternity houses were not used, owned or operated by Denison University, and (7) that the nine fraternity buildings were not used exclusively for charitable purposes within the meaning of the Constitution of Ohio and Section 5709.12 of the Eevised Code.
Four errors are assigned, the third being substantially identical with the seventh error in the notice of appeal and the fourth incorporating substantially the first six errors assigned in the notice of appeal. The first and second errors assigned do not appear among those assigned in the notice of appeal. The first error assigned is that the decision is contrary to law, which apparently is included within the grounds set forth in the eighth paragraph of Section 5717.04, Eevised Code, which paragraph reads as follows:
“If upon hearing and consideration of such record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.”
The second error assigned is as follows:
“The decision is unreasonable and unlawful for the reason that the property with respect to which tax exemption is sought is owned and used by a public college and/or public institution of learning within the meaning of Section 5709.07 of the Eevised Code Of Ohio.”
In the brief of the university, the questions presented are grouped into five arguments as follows: (1) The fraternity houses are exempt from taxation under the provisions of Section 5709.07, Eevised Code, with reference to “public colleges and academies and all buildings connected therewith, and all land connected with public institutions of learning,” (2). the fraternity houses are exempt from taxation under the provi *436 sions of Section 5709.12, Revised Code, with reference to “real * * * property belonging to institutions that is used exclusively for charitable purposes,” (3) the fraternity houses are the property of Denison University, (4) the facilities of the university, including the fraternity houses, are used exclusively for charitable purposes, and (5) the Supreme Court of Georgia ,in the case of Alford, Tax Assessor, v. Emory University (1960), 216 Ga., 391, 116 S. E. (2d), 596, held that fraternity houses located upon the campus of Emory University were exempt from taxation.
The applicable portion of the Constitution of Ohio (Section 2, Article XII), which authorizes the enactment by the General Assembly of general laws exempting property from taxation, reads as follows:
“* * # and without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt burying grounds, public schoolhouses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose * * *.”
(See 115 Ohio Laws, Pt. II, 446, amendment adopted November 7,1933, effective January 1, 1934.)
It was held in the early case of Little, Treas., v. United Presbyterian Theological Seminary (1905), 72 Ohio St., 417, 426, 427, in an opinion by Shauck, J., that the exemption provisions of the Constitution are not self-executing but merely authorize the Legislature “to provide by general laws for the exemption of property of the designated character. ’ ’ See, also, State, ex rel. Bartlett, Pros. Atty., v. Thatcher, Aud. (1941), 138 Ohio St., 235, 236; Wehrle Foundation v. Evatt, Tax Commr. (1943), 141 Ohio St., 467, paragraph four of the syllabus; Zangerle, Aud., v. City of Cleveland (1945), 145 Ohio St., 347, 351; and Board of Edn. of City School Dist. of City of Cincinnati v. Board of Tax Appeals (1948), 149 Ohio St., 564, 567.
As above indicated, the university, in the seventh error assigned in the notice of appeal, relies upon the provisions of Section 5709.12, Revised Code, which, so far as applicable here, reads as follows:
*437 “* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.”
This section also forms the basis for the third error assigned in the brief.
The university, although not referring to it in its notice of appeal, in the second error assigned relies upon Section 5709.07, Revised Code, which reads in part as follows:
“Public schoolhouses and houses used exclusively for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof, and not leased or otherwise used with a view to profit, public colleges and academies and all buildings connected therewith, and all lands connected with public institutions of learning, not used with a view to profit, shall be exempt from taxation. This section shall not extend to leasehold estates or real property held under the authority of a college or university of learning in this state * * *.”
With reference to Section 5709.07, supra, it will be noted that, according to the express provisions of the last sentence above quoted, the entire section is expressly made inapplicable “to leasehold estates or real property held under the authority of a college or university of learning in this state.”
It has been held that there is no presumption in favor of exemption from taxation, but that the presumptions are against tax exemption unless such exemption is clearly authorized by the Constitution and by act of the General Assembly. See Cullitan, Pros. Atty., v. Cunningham Sanitarium (1938), 134 Ohio St., 99, in which the first paragraph of the syllabus reads as follows:
“There is no presumption favorable to the exemption of property from taxation. An exemption from taxation must be clearly and expressly stated in the statute and must be such only as is authorized by the Constitution.”
See, also, Board of Edn. of City School Dist. of City of Cincinnati v. Board of Tax Appeals, supra, and paragraph four of the syllabus of Wehrle Foundation v. Evatt, Tax Commr., supra. This rule is also incorporated in Section 5709.01, Revised Code, which reads in part as follows:
“All real property in this state is subject to taxation, except only such as is expressly exempted therefrom.”
*438 At numerous times during the taking of the testimony, in the briefs and in the oral argument, reference was made to “college fraternities,” but testimony of a definitive type was scarce. In 9 Encyclopedia Britannica (1956 Ed.), 701, college fraternities are described as follows:
‘ ‘ Student organizations peculiar to the colleges and universities of the United States and Canada, usually named from letters of the Greek alphabet; hence frequently called ‘Greek letter fraternities.’ They are nominally secret, each with its individual ritual, badge, coat of arms, flag, colours, flower, motto, grip and passwords and having other common characteristics. They have a central governing body, each fraternity having branches called chapters which are also usually designated by Greek letters. As a rule each chapter admits its new members from the lowest or freshman college class. Members cease to be active when they leave college. In a number of instituttions admission of freshmen is forbidden by college rule. In some of the large universities there are chapters of 50 or more fraternities. All of the fraternities aim to be select and to choose their members carefully from the mass of incoming students, the rushing, as the process of selection is called, being well organized and supervised by the older members.
“# # * commencements and on other homecoming occasions former active members of the chapters return to the chapter houses and help to foster the pride and loyalty of the undergraduates. The chapter houses usually are owned by corporations made up of alumni, who provide the committees of their own number to manage the property and to supervise and regulate scholarships, financial affairs, conduct of the undergraduate members and the relationship of the chapter to the college administration and college affairs. * * *” See, also, 17 Collier’s Encyclopedia, 401.
With reference to the conditions existing at Denison University, all three of the witnesses offered by the university stressed the efforts of the university to have a sufficient number of fraternities located on the campus. However, it is clear that the membership, at least in eight of the fraternities, was by invitation or rushing and not by application of the student or by any control exercised by the university.
*439 According to testimony of University Treasurer Hodges, the first witness presented by the university, the fraternities affiliated with national organizations and located at Denison University occupy the same relation to the national organizations as similar chapters at other universities. On this question, so far as the eight fraternities with national affiliations at Denison University are concerned, Hodges, testified :
“Q. And they, so far as you are aware, are subject to the same rules or the same affiliations, occupy the same relation with the parent body or the national organization as the chapter does at any other school? A. Yes.
“Q. There is nothing unique about the operation of the fraternities at Denison as contrasted with the operation of them at any other college? A. Only to the extent that we have long recognized Denison as a fraternity school and have tried to provide enough fraternities so that being a member of a fraternity does not put you in a minority but puts you in a majority of the men studying at Denison.”
The finding of the Board of Tax Appeals was that the nine buildings in question were “operated under lease by fraternities for fraternity purposes, and but one of the many uses, for which the fraternities use these buildings, is that of providing lodging for fraternity members only.” The board found also that “these buildings were not used exclusively for charitable purposes within the meaning of those words as used in the Ohio Constitution and in Bevised Code Section 5709.12.”
From an examination of the record, we are of the opinion that the board’s-findings were fully supported in the record, and that the decision of the board is neither unreasonable nor unlawful and should be affirmed. As we view it, the ultimate test in determining whether property may be exempted from taxation is whether it is used exclusively for charitable purposes. In the case of Zindorf v. Otterbein Press (1941), 138 Ohio St., 287, this court held in paragraph one of the syllabus as follows
“The use of property exclusively for charitable purposes is the criterion of exemption thereof from taxation. The right of exemption, derived from Section 2 of Article Nil of the state Constitution, is lost if the property be appropriated to other *440 uses. (Cullitan, Pros. Atty., v. Cunningham Sanitarium, 134 Ohio St., 99, approved and followed.) ”
See, also, East End Hospital v. Evatt, Tax Commr. (1942), 139 Ohio St., 608, in which this court, in a per curiam opinion, held in part as follows:
“It is well settled that the use of property exclusively for charitable purposes is the criterion of exemption thereof. There is no presumption in favor of the exemption of property from taxation, and before such exemption is authorized the right thereto must be established by evidence, the burden of producing which is, of course, upon the applicant. The right to such exemption must be shown indubitably to exist. Cullitan, Pros. Atty., v. Cunningham Sanitarium, 134 Ohio St., 99, 16 N. E. (2d), 205.” (Emphasis ours.)
In the case of Incorporated Trustees of Gospel Worker Society v. Evatt, Tax Commr. (1942), 140 Ohio St., 185, this court held as follows:
“1. Property belonging to a charitable institution may not be exempted from taxation unless it is used exclusively for charitable purposes.
“2. Under Section 2 of Article XII, Constitution of Ohio, and Section 5353, General Code [Section 5709.12, Revised Code], property which is used to produce income to be used exclusively for charitable purposes may not be exempted from taxation. The test is the present use of the property rather than the ultimate use of proceeds received from the property sought to be exempted.” (Emphasis ours.)
See, also, Wehrle Foundation v. Evatt, Tax Commr., supra, and Hospital Service Association of Toledo v. Evatt, Tax Commr. (1944), 144 Ohio St., 179.
As pointed out above, the university here relies on the provisions of both Sections 5709.07 and 5709.12, supra. However, this court held in Ursuline Academy of Cleveland v. Board of Tax Appeals (1943), 141 Ohio St., 563, that the test is the same whether the application is made under Section 5349, General Code (Section 5709.07, Revised Code), or Section 5353, General*Code (Section 5709.12, Revised Code), and that property belonging to a public college, academy or institution of learning not publicly owned must be “used exclusively for a *441 charitable purpose” in order to qualify for exemption from taxation. The second paragraph of the syllabus in the Ursuline Academy case, supra, reads as follows:
“Under Section 5349 or Section 5353, General Code, property belonging to a public college, academy or institution of learning not publicly owned may be exempted from taxation only if used exclusively for a charitable purpose at the time the exemption is sought.”
In the course of the opinion by Turner, J., at page 569, it is said:
“Whether appellant’s claimed exemption comes under Section 5349, General Code, as contended by appellant or under Section 5353 as suggested by appellee, the test is the same, viz., the present use.”
The university cites and relies upon the case of Kenyon College v. Schnebly, Treas. (1909), 12 C. C. (N. S.), 1, affirmed without opinion, Schnebly, Treas., v. Kenyon College, 81 Ohio St., 514. The Kenyon College case is discussed at some length in the Ursuline Academy case,, supra, at page 569, the opinion by Turner, J., pointing out that the 1912 amendment of Section 2, Article XII of the Constitution, changed the emphasis from the nature of the institution owning the property to the use to which the property was put.
Stated another way, the phrase, “institutions of purely public charity,” which was incorporated in the provisions of Section 2 of Article XII of the original 1851 draft of the Constitution and which remained unchanged when this section was amended on November 7, 1905, was changed to read, “institutions used exclusively for charitable purposes,” by the amendment of the section, effective September 3, 1912, and this language as amended in 1912 has remained unchanged in the subsequent amendments of this section.
The Kenyon College case was decided in 1909. Because of the amendment of Section 2 of Article XII of the Constitution in 1912, its meaning has been changed. See Jones, Treas., v. Conn et al., Trustees, 116 Ohio, St., 1, 10, opinion by Allen, J., which is contra to the Kenyon College case.
As pointed out above, the burden was upon the university to prove that it was entitled to the exemptions claimed, and in *442 our opinion it has failed to do this. The Board of Tax Appeals relied upon two decisions of this court, Wilson, Aud., v. Licking Aerie No. 387, F. O. E., supra, and National Headquarters Disabled American Veterans v. Bowers, Tax Commr., supra. In both cases, it was stated that the use of the property, sought to be exempted, exclusively for charitable purposes was the criterion to be applied in determining eligibility for exemption.
The record here does not provide information upon which to determine the percentage of time or the extent of use of the fraternity buildings between dining-room and dormitory uses on the one hand and, on the other hand, periodic fraternity business and organization meetings for election of officers, dances and other social affairs, homecoming events, entertainment of alumni, rushing, hazing or initiation and related activities.
In our opinion, however, the record does show that the buildings were not used exclusively for charitable purposes and it also appears clear that, so far as the dormitory facilities are concerned, only dues paying members in good standing were permitted to live in a particular fraternity house, such right being denied to other male students at the university whether they belonged to another fraternity or to no fraternity.
The university cites and relies upon the case of Alford, Tax Assessor, v. Emory University, supra. In our opinion, the Alford case is distinguishable if for no other reason than the fact that Emory University had not granted leases similar to those involved in the case now before us. In the report of that case, the Georgia Supreme Court, at page 399, emphasized this distinction in the following language:
a* * * The case is also distinguishable from State of Ga. v. Davison, 198 Ga., 27 (31 S. E. 2d, 225), because the contract there involved conveyed to the grantee fraternity an estate for years, while the contract here involved does not convey any such interest in the property. * *
The fourth paragraph of the headnotes in the ease of State of Ga. v. Davison, supra, appearing in the South Eastern Reporter, reads as follows:
“Contract whereby regents -of university system leased land to fraternity association for 99-year term for rental of *443 $1 per year and whereby the lessee agreed to erect a building on premises to cost not less than. $20,000 nor more than $35,000 which was to become lessor’s property on expiration of lease created an ‘estate for years,’ within statute, which was subject to levy under tax execution and sale as property of lessee. ’ ’
The general rule is against the exemption of college fraternity houses from taxation. In an annotation appearing in 66 A. L. R. (2d), 904, the general rule is stated as follows:
“With few exceptions the courts have held that college fraternities and sororities are not exempt from taxation, because they exist primarily for the convenience of their members, and are mainly concerned with providing them with board, lodging, and recreation, while any educational, charitable, and benevolent purposes are of secondary importance. * * * ”
Again,, in the annotation, at page 908, the writer makes the following statement:
“The arguments have been unsuccessfully advanced that the property of a fraternity should enjoy the same exemption from taxation as accorded to regular college dormitories, where student housing was inadequate at the college, or where the fraternity chapter house was built on college grounds.
“Even where the fraternity supplies a necessary accommodation for students which has not been provided by the educational institution itself, and but for sorority houses, the state would be put to the expense of building and maintaining additional dormitories, it was nevertheless held in Albuquerque Alumnae Assn. v. Tierney (1933), 37 N. M., 156, 20 P. 2d, 267, that a sorority should not be tax exempt, the court saying that it did not necessarily follow that where the educational institution itself had failed to furnish necessary facilities and adjuncts to education, or had inadequately furnished them, the same exemption would attach to property devoted to the same purposes by the students themselves, or by some independent agency such as a fraternity or a sorority.”
For cases denying tax exemption to colleges, fraternities and sororities, see Knox College v. Board of Review (1923), 308 Ill., 160, 139 N. E., 56, 35 A. L. R., 1041; People, ex rel. Cornell University, v. Thorne et al., Assessors (1945), 184 Misc., 630, 57 N. Y. Supp. (2d), 6; Inhabitants of Orono v. Sigma Alpha *444 Epsilon Society (1909), 105 Me., 214, 74 A., 19; and Powers, Atty. Gen., v. Harvey (1954), 81 R. I., 378, 103 A. (2d), 551.

Decision affirmed.

Weygandt, C. J., Zimmerman, Bell and Hurd, JJ., concur.
Bryant, J., of the Tenth Appellate District, sitting by-designation in the place and stead of Matthias, J.
Hurd, J., of the Eighth Appellate District, sitting by designation in the place and stead of Herbert, J.