MAYOR AND COUNCIL OF THE CITY OF MACON, plaintiff in error, *vs.* THE CENTRAL RAILROAD AND BANKING COMPANY, defendant in error.

[This case was argued at the last term, and decision reserved.]

1. Statutes under which exemption from taxation is claimed by corporations, will be strictly construed, and the exemption will not be held to be conferred unless the terms under which it is granted clearly and distinctly show that such was the intention of the Legislature.

2. The Act of 29th December, 1869, providing that the "stock of the Macon and Western Railroad Company shall hereafter pay the same annual tax to the State as the other railroad companies of this State now do, to wit: one-half of one per cent. on the amount of the net income," does not confer on the company an exemption of its property within the city of Macon from liability to be taxed by the city authorities as it was before the passage of said Act.

3. The city of Macon, under its charter, has power to tax all real and personal property within its limits, and there is nothing in the charter of the Macon and Western Railroad Company, or in any statute, that exempts the property of the company thus situated from the right o the city to assess the taxes complained against.

Corporations. Taxes. Laws. Macon. Before Judge HILL. Bibb county. At Chambers. August 21st, 1873.

The Central Railroad and Banking Company filed its bill against the Mayor and Council of the city of Macon, making this case:

The defendant has issued three executions against the Macon and Western Railroad Company for taxes for the years 1870, 1871 and 1872, respectively, the first for $1,095 00, the second for $1,060 00, and the third for $1,642 50, which have been levied upon property formerly belonging to said company.

The Macon and Western Railroad Company has been, by an Act of the General Assembly of the State of Georgia, approved August 26th, 1872, merged into complainant. The property against which said taxes were assessed, and now levied on, with certain exceptions, was indispensable to the successful transaction of the business of the Macon and Western Railroad Company, and now occupies the same relation to the business of complainant, being used for depots, tracks, shops, etc. The exceptions referred to have been regularly returned for taxation and taxes paid thereon. This property composed a part of the capital stock of said company, and is now embraced in the capital stock of complainant. Neither under the laws of the State of Georgia, the amended charter of the Macon and Western Railroad Company, of date February 11th, 1869, nor under the charter of the city of Macon, has the defendant the right to assess and levy such a tax. Prays the writ of injunction.

The answer and affidavits are unnecessary to an understanding of the decision.

The bill was sanctioned, and the writ of injunction ordered to issue. Whereupon the defendant excepted.

JOHN B. WEEMS; R. W. JEMISON, for plaintiff in error.

LYON & IRVIN, for defendant.

TRIPPE, Judge.

1. It is a cardinal rule in the construction of grants by the public that nothing passes by implication; that statutes under which special privileges, amongst which is exemption from taxation, are claimed by a corporation, will be strictly construed in favor of the public, and the exemption will not be held to be conferred unless the terms of the grant clearly and distinctly show that such was the intention of the Legislature. So uniform are the authorities on this point that it is unnecessary to discuss it, or to refer to but a few of them: 3 Peters, 289; 4 Peters, 514; 6 Peters, 736; 19 Pennsylvania, 144; 8

622      SUPREME COURT OF GEORGIA.

Mayor and Council of Macon *vs.* Central Railroad, etc., Company.

Howard, 581; 10 Howard, 376; 1 Black., 358, 436. The principle has been repeatedly recognized by this Court: 9 *Georgia*, 517; 7 *Georgia*, 221; 8 *Georgia*, 23.

2. The exemption from liability to the tax complained against in this case, is claimed by defendant in error under the Act of February 9th, 1869. The title and the first section of that Act, which is all that is necessary to refer to, is as follows:

"AN ACT to amend the charter of the Macon and Western Railroad Company, which was assented to on the 29th of December, 1847; to allow an increase of the capital stock of said company; to fix the rate of tax to be paid by the same, and for other purposes.

"SECTION I. *Be it enacted, etc.*, That the said Macon and Western Railroad Company is hereby authorized to increase its capital stock so as to make the same ($2,500,000 00) two million five hundred thousand dollars. This increase may be made from time to time, as it may be deemed expedient by a majority of the board of directors of said company for the time being, and by such sum or sums as said board of directors may order and determine; and said board of directors for the time being, is hereby authorized, by a majority, to prescribe the terms and conditions of subscription for such additional stock as may, from time to time, be required: *Provided, nevertheless*, that such additional stock, as it may be issued, as well as the present stock of said company, shall hereafter pay the same annual tax to the State as the other railroad companies of this State now do, viz: one-half of one per cent. on the amount of the net income."

The consolidation or union of the Macon and Western Railroad with that of the Central Railroad took place after these taxes had been assessed on the property of the former, and, therefore, the question is not affected by any provisions in the charter of the Central Railroad. The taxes are for the years 1870, 1871 and 1872.

3. Assuming, at this point, that the city of Macon had the power to levy these taxes prior to the Act of 1869, the question is, did that Act grant to the company an exemption of its property within the city of Macon from liability to be taxed by the city authorities as it was before the passage of the Act. The terms of the Act are really peculiar. There is, in words, no exemption whatever from any taxation, nor an express limitation as to the extent to which it might be taxed, even by the State. The words touching the question are: "*Provided, nevertheless,* that such additional stock, as it may be issued, as well as the present stock of said company, shall hereafter pay the same annual tax to the State as the other railroad companies of this State now do, viz: one-half of one per cent. on the amount of the net income." The most that can be claimed from this is, that the State, in its annual tax law, will not assess upon the stock of the company, as tax for the State, more than one-half of one per cent. on the net income. And, for this reason, as a ground for such construction, the company, before this Act, was liable to be taxed on the amount of its stock, say one-half of one per cent. on $1,500,000 00. If the stock were increased to $2,500,000, it would be liable to the same rate on the increased amount, to-wit: one-half of one per cent., or whatever the rate might be, on the additional $1,000,000 00 of stock. To avoid this, the company, doubtless, desired some assurance; and, as there was then a tax of one-half of one per cent. on the net income, assessed by the State on all railroads, and had been for eleven years, the provision quoted was inserted, making it subject to the general tax law as to railroads.

But it is totally unlike the guaranty or exemption granted any other company. In the charter of the Georgia Railroad, the clause is, "The stock of the said company and its branches *shall be exempt from taxation* for and during the term of seven years from and after the completion, etc.; and after that shall be subject to *a tax not exceeding one-half per cent.* per annum on the net proceeds of *their investments*:" Prince's Digest, 308. Here is a clear negative against a liability to be taxed beyond

the prescribed limit. And it was so held in *The Georgia Railroad and Banking Company vs. The City Council of Augusta,* 26 *Georgia,* 651. And so in the charters of the other railroads which grant any exemption, express negative words are used against the liability to taxation except at a specified rate, such as, "shall not be subjected to be taxed higher," "shall not be taxed higher," "nor shall any other tax be levied and collected," etc. In none of these is there any expression stating that no other tax, except at the specified rate, shall be levied "*by the State,*" or shall be paid "*to the State.*" In the charter of the Muscogee Railroad the words are, "shall not be taxed *by the State* higher than one-half of one per cent. upon its net income," but it is immediately added, "nor *shall any other tax* be levied or collected on the stock of said company."

By the Act of 1869, the Macon and Western Railroad Company was authorized to increase its capital stock to $2,500,000. No further road was to be built; no additional improvements were required; no public interest to be subserved, or benefit gained. So far as the Act shows, it only authorized the directors, from time to time, to raise the then amount of capital stock, one and a quarter or one and a half millions, to two and a half millions. No burden was thereby to be assumed by the company which was not then upon it, except that the increased stock would have increased its liability to be taxed by the State. Hence, to guard against that, were probably added the words, that it should thereafter "pay the tax assessed on other roads, one-half of one per cent. on the net income."

We do not say that this exemption was secured as a chartered right, under the peculiar phraseology of the Act. It is not necessary to pass upon that. But it is our opinion that under no proper construction of this Act can it be held that the real estate of the company, situate in the city of Macon, had any privileges secured to it against the taxing power of the municipal authorities.

If, then, there is no exemption in the charter of the Macon

and Western Railroad Company, or in any Act amendatory thereof, what is there to prevent the Mayor and Council of the city of Macon from taxing its property within the limits of the city? By the city charter, they " have power and authority to levy and collect a tax upon all property, real and personal, within the limits of the city:" Act of March 21st, 1866. The power to tax all real and personal property is clear and explicit. If the lots and parts of lots on which this tax is assessed were the property of an individual citizen, no question would be raised. But it is said that power to tax these lots on which are the machine shops, depot buildings, and part of the road-bed of the company, implies the power to seize and sell, and that thus a portion of the appurtenances of the road might go into the hands of strangers, and that it could not be the intent of the Legislature to permit such important interests as these are to be thus crippled by the danger of dissolution by piecemeal. Would not the same danger exist if a judgment creditor were to levy on this property? Could he not levy on the lots on which are situate these machine shops and buildings? Debts due the public or private creditors may be, and often are, great inconveniences; but that does not affect the question of liability to pay. It is not a good objection to say, if a certain piece of property is liable to a tax, or a debt, that it might be sold for its payment, and the owner seriously paralyzed in his business. If a railroad company is solvent, the tax or debt could be, and would be, paid to avoid such great damage. If it were insolvent, and could not pay, it and its creditors might protect themselves against the ruin or sacrifice caused by sales of detached portions of its road. No person, be he a man or a corporation, can claim that his legal liability to bear a share of the public burden is to be determined by the money he might lose, or the damage that might ensue to his property if that liability be enforced. As a matter of policy, the Legislature has granted to several corporations a total exemption from taxation, or fixed their liability at a limited rate. That is a matter with the law-making power. If no such immunity is granted,

then all property is alike bound by the same law, and none has any privilege that does not belong to all.

On the other side, it might be, and has been asked, why should not the property of a railroad company, situate in a city, which may be of very great value, and which has all the benefit and protection of the municipal authorities and ordinances, the police and fire organizations, kept up and supported at the expense of the city, be subject, like all other city property, to bear a portion of the burdens which such benefits necessarily require? But it is unnecessary to enter into this question. It is not a sufficient answer to say that some of the property of the company might thereby run the hazard of being seized and sold, and the whole corporate estate and franchise be endangered. It cannot be taxed higher than what is assessed on any other citizen, and if that be paid, all risk to property or franchise is avoided.

Suffice it to say, that where relief from a common burden is claimed, it must be made to appear that the exemption has been distinctly granted by the authority which has the power. We do not think that this can be gotten from the Act of February 9th, 1869; and it is further our opinion that, under the powers conferred by the city charter, the Mayor and Council of the city of Macon had authority to levy and collect these taxes, and that there was error in granting the injunction restraining their collection.

Judgment reversed.