20932.   ALFORD, Tax Assessor, *et al.*
v. EMORY UNIVERSITY.

ARGUED JUNE 14, 1960—DECIDED OCTOBER 6, 1960—
REHEARING DENIED OCTOBER 18, 1960.

*George P. Dillard, Herbert O. Edwards,* for plaintiffs in error.
*James A. Mackay, Henry L. Bowden, John Wesley Weekes,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) ■ The "Not on Digest" tax assessments here involved were made on ordinary tax return blanks, and the name of the taxpayer purported to have failed to return the property for taxation in each instance is shown to be "Emory University"; and while the name of the fraternity was shown on the "Address" line, this appears to be nothing more than a further description of the property that was assessed, such as "4 Fraternity Drive," also known as "Delta Tau Delta Fraternity," and "6 Fraternity

Drive" also known as "Sigma Chi Fraternity," and so on. The tax bills, based on these assessments, were made out showing Emory University as "Owner" in each instance, and the names of the fraternities do not appear on these tax bills. In paragraph 4 of the petition as amended, it is alleged that the thirteen parcels of property therein described are "owned by Emory University." The assessments were therefore against Emory University, and not against the fraternities. Accordingly, the trial judge did not err in denying the plea of nonjoinder of parties plaintiff. See *Steadham v. Cobb,* 186 Ga. 30, 41 (196 S. E. 730); *Parnell v. Wooten,* 202 Ga. 443, 448 (43 S. E. 2d 673).

■ The petition alleged that the property here involved belongs to Emory University, and that Emory University is the owner thereof; that the residential buildings were erected on lands to which Emory University held fee-simple title under described deeds, copies of which are attached to the petition; and that the buildings were erected for and used as a college, Emory University being a duly incorporated university open to the general public; and that the property was not used for purposes of private or corporate profit or income. These allegations, which must be taken as true on demurrer, state a cause of action, and the trial judge did not err in overruling the general demurrer. Art. 7, Sec. 1, Par. 4 (*Code Ann.* § 2-5404); *Code Ann* § 92-201; *Baggett v. Ga. Conference Assn. of Seventh Day Adventists,* 157 Ga. 488 (121 S. E. 838); *Elder v. Trustees of Atlanta University,* 194 Ga. 716 (22 S. E. 2d 515, 143 A. L. R. 268).

■ Does the evidence adduced on the interlocutory hearing support the allegations of the petition and judgment of the trial court that the property is exempt from taxation under the constitutional and statutory provisions heretofore referred to, because they are "buildings erected for and used as a college"? The contract between the university and the trustees of one of the fraternities was introduced in evidence. It recites: "Whereas, Emory University is desirous of having additional buildings erected on its campus for housing of its students," and provides that the fraternity house shall be constructed according to plans and specifications, and at a point on the campus agreed to by the

university and the trustees of the fraternity; that the university shall enter into a contract with the builder for the construction of a house within the cost range specified by the contract, and is to pay the contractor, upon certification from the architect, from funds made available to the university by the fraternity, forty percent of the contract price to be furnished from funds of the fraternity, and the remaining sixty percent from funds furnished by the university, which the fraternity agrees to repay in monthly or annual installments at an agreed rate of interest; that, upon completion, the house shall always be known as the named fraternity house, and shall always be occupied by students of Emory University who are members or pledges of the fraternity, said students to be selected, and the house to be occupied, managed, and maintained entirely and exclusively by the house committee or other authorities of the fraternity; that, until the university has been paid the entire amount invested by it in said house, fire insurance shall be carried thereon at the expense of the fraternity payable to Emory University; that in the event of any damage to the house the amount of insurance collected shall be used to repair and restore the house, but, if the destruction of the house is complete, the fraternity may elect not to rebuild the house and may at its option receive the amount of the insurance in excess of a sufficient amount to repay Emory University for the amounts that it may have invested in said property, with simple interest at an agreed rate. The contract prohibits specified conduct in the house in violation of law, or the general rules of Emory University for the discipline of its student body (which rules were also introduced in evidence), and confers upon the university the right at any and all times, through any designated member of its faculty, to enter upon and inspect the house and each and every room thereof to see that the house is being managed and conducted in accordance with the agreement; that the fraternity, at any time when it continues to have any interest in the house under the contract, may transfer and assign its right to name, occupy, and control said house to any other fraternity maintaining a regular licensed charter at Emory University, or to any other organization of the students or faculty recognized by the university, provided the

transferee shall agree to thereafter comply with the fraternity's obligations under the contract, including the payment of any arrearages; that, upon default by the fraternity in the repayment of the loan to the university, the university reserves the right, upon sixty days' notice, (a) to suspend the license granted and take over operation of the house, and operate it as it does other dormitories, and if at any time the fees collected by the university (in excess of the expenses incurred by it in operating and maintaining said house) shall equal the amount due to that date under the contract, then the control and right of exclusive occupancy shall be restored to said fraternity so long as it shall comply with its obligations under the contract, but subject to the same remedy for subsequent default; or (b) refund to said fraternity the amount invested by it in said house, without interest, less a fair depreciation, and that, if the amount of depreciation cannot be agreed upon, it shall be fixed by arbitration; that, after said refund shall have been made, any further interest of the fraternity in the house shall cease, and the same shall thereafter be controlled by the university as all of its other dormitories are owned and controlled; that, in the event Emory University should at any time exercise option "a", it may thereafter, while the default continues, by additional notice of thirty days to the fraternity of its intention to do so, exercise option "b". Each fraternity collects its own dues, pays its own bills, employs its own house mother with the approval of the university, and either the university or the fraternity can discharge her as they see fit. The evidence further discloses that no fraternity or other organization is allowed upon the campus unless it is the holder of a regular license charter issued by the university, which, by its terms, "may be recalled at any time by order of the Board of Trustees upon the recommendation of the Committee on Student Activities and Organizations."

. While this court has held that, where the owner of land grants to another the perpetual possession and use of land and of a house to be erected thereon by the grantee so long as the grantee shall comply with the covenants contained in the agreement, such grantee holds a base or determinable fee, and the property should be taxed to the grantee as owner (*Atkinson v.*

*Orr*, 83 Ga. 34, 9 S. E. 787; *Penick v. Atkinson*, 139 Ga. 649, 77 S. E. 1055, 46 L. R. A. (NS) 284, Ann. Cas. 1914B 842), and counsel for the plaintiffs in error contend that such ruling is controlling here, we cannot agree with this contention. There is no such leasing of the property under the contract here as was true under the contract referred to in those decisions. There the property was leased for the exclusive use of the grantee, and for a stipulated rental payable to the grantor. Here the use of the property by the fraternities is to provide housing for the students of the university; only students of the university may reside therein; it is a permissive use only, subject to the control, supervision, and cancellation by the university, with the obligation on its part in the event of cancellation to pay the fraternity the cost of the construction of the house, less depreciation. As pointed out by this court in *Williams v. J. M. High Co.*, 200 Ga. 230 (36 S. E. 2d 667, 162 A. L. R. 1139), the rights conferred by the contract in the *Atkinson v. Orr* case, supra, were inheritable and assignable, while, under the contract here involved, no rental is paid by the fraternity to the university, the right to the use of the fraternity house is not inheritable, and is assignable only by consent of the university to another fraternity maintaining a regular license charter issued by the university, or to an organization of the students or faculty recognized by the university. In *Ga. Mausoleum Co. v. City of Dublin*, 147 Ga. 652 (2) (95 S. E. 233), this court held: "It is the use made of the property . . . which determines the matter of taxation." Under the evidence in this case, these fraternity buildings were built by the university; they are regulated and supervised by the university; they are located in the heart of the campus, upon property owned by the university, required to be so located and to be occupied only by students of the university; adopted as a part of the dormitory and feeding system of the college, and an integral part of the operation of the college. In our opinion these fraternity houses are buildings erected for and used as a college, and not used for the purpose of making either private or corporate income or profit for the university, and our law says that they shall be exempt from taxes. *Elder v. Trustees of Atlanta University*, 194 Ga. 716, supra; *Baggett v. Ga. Confer-*

*ence Assn. of Seventh Day Adventists,* 157 Ga. 488, supra, and cases there cited; *Flint Electric Membership Corp. v. Adams,* 214 Ga. 280 (104 S. E. 2d 431).

The fact that the local fraternity collects initiation fees and dues from its members and remits a portion thereof to the national organization does not require a different result, since fees and dues are required of all members of the fraternity, whether they reside in the fraternity house or not, and no part of these is received by the university. The case is also distinguishable from *State of Ga. v. Davison,* 198 Ga. 27 (31 S. E. 2d 225), because the contract there involved conveyed to the grantee fraternity an estate for years, while the contract here involved does not convey any such interest in the property. Under the evidence in this case, the trial judge was authorized to find that the fraternity houses here involved were exempt from taxation.

*Judgment affirmed. All the Justices concur.*