34961, 34998. ALLRIGHT PARKING OF GEORGIA, INC. et al. v. JOINT CITY-COUNTY BOARD OF TAX ASSESSORS FOR THE CITY OF ATLANTA-COUNTY OF FULTON et al; and vice versa.

MARSHALL, Justice.

Allright Parking of Georgia, Inc. (Allright) brought this suit on July 7, 1977, to contest a determination by the Joint City of Atlanta-Fulton County Board of Tax Assessors (Board of Tax Assessors) that Allright's interest in certain real estate under an agreement of May 28, 1976, with the Metropolitan Atlanta Rapid Transit Authority (MARTA) is subject to ad valorem property taxation.

Allright leased the subject property from the State of Georgia in 1972, for a term of 73 years. See Ga. L. 1972, pp. 58-132, as amended by Ga. L. 1974, pp. 1247-1407. The property consists of approximately 10 acres in downtown Atlanta, which are bounded generally on the southeast by the Forsyth Street Viaduct, on the northeast by the Western & Atlantic Railroad, on the northwest by Foundry Street, and on the west by the Central of Georgia Railroad. Under the lease, Allright was required to pay ad valorem taxes on "its interest or estate" in the property. Allright paid the City of Atlanta and Fulton County ad valorem taxes on this property for the years 1973-1976. In 1976, Allright's leasehold interest was valued at $2,541,900 and assessed at $1,016,760. On this basis, the 1976 city and county taxes paid by Allright on this property totaled $60,409.53.

On April 5, 1976, MARTA acquired fee simple title to this property from the State of Georgia, pursuant to an agreement entered into between them in 1975. On April 8, 1976, the City of Atlanta, acting on behalf of MARTA, filed a condemnation action against Allright's interest in the property. The City of Atlanta, MARTA, and Allright negotiated a settlement in compromise of the condemnation proceeding. In the settlement agreement,

MARTA agreed to pay Allright $1,900,000 in consideration for executing an amendment to the lease, which would supersede the lease. The amendment to the lease was entered into between MARTA and Allright on May 28, 1976.

Initially, Allright's interest in the property as of January 1, 1977, was valued by the Board of Tax Assessors at $2,055,330 and assessed at $822,130. On this basis, Allright's city and county ad valorem tax bill would have been $49,231.26. However, Allright demanded arbitration as to the valuation and assessment on the property, and, through arbitration proceedings, the valuation and assessment subsequently were reduced to $1,350,000 and $540,000, respectively. The city and county ad valorem tax assessment on this basis is $32,362.78.

Allright also filed a protest before the Board of Tax Assessors, taking exception to the board's determination that Allright's interest in the property was subject to ad valorem taxation. Before the board, Allright's position was that its interest in the property is a mere usufruct, which is not subject to ad valorem taxation (*Whitehead v. Kennedy,* 206 Ga. 760 (58 SE2d 832) (1950)), rather than an estate for years, which is taxable. *Delta Airlines v. Coleman,* 219 Ga. 12 (131 SE2d 768) (1963). Allright received notice from the Board of Tax Assessors in mid June 1977 that its protest had been rejected. As stated earlier in the opinion, this suit was filed on July 7, 1977.

In the complaint, Allright alleged that its interest in the property is a nontaxable usufruct. The Board of Tax Assessors answered, denying the allegations of the complaint. Subsequently, MARTA was allowed to intervene as a party-plaintiff.

Allright's city ad valorem tax bill became delinquent after August 15, 1977, and Allright paid it on that date. Allright paid its county ad valorem tax bill on September 29, 1977, and these taxes subsequently became delinquent after October 15, 1977.

The parties eventually agreed to try the case upon a stipulation of facts at a bench trial on November 3, 1978. On October 18, 1978, the defendants filed a motion to dismiss for lack of jurisdiction under Code Ann. § 92-6413

(Ga. L. 1976, p. 1154), which provides: "Notwithstanding any other provision of law to the contrary, before the superior court shall have jurisdiction to entertain any civil action, appeal, or affidavit of illegality filed by any aggrieved taxpayer respecting liability for ad valorem property taxes, taxability of property for ad valorem property taxes, valuation of property for ad valorem taxes, or uniformity of assessments for ad valorem property taxes, such taxpayer shall pay the amount of ad valorem property taxes assessed against the property at issue for the last year for which taxes were finally determined to be due on such property." See *North by Northwest Civic Assn. v. Cates,* 241 Ga. 39 (243 SE2d 32) (1978). In the motion to dismiss, the defendants argued that, "1977 ad valorem taxes based on the 1976 ad valorem assessment were not paid prior to the filing of the above action on July 7, 1977, and that pursuant to Georgia Code Ann. § 92-6413 (Ga. L. 1976, p. 1154 et seq.), this court does not have jurisdiction of plaintiffs' action." The plaintiffs responded by arguing that Code Ann. § 92-6413 is either inapplicable to this case or unconstitutional.

Following a hearing, the trial court ruled that Allright's interest in the subject property is a nontaxable usufruct, rather than a taxable estate for years. However, the trial court also ruled that under Code Ann. § 92-6413 it lacked jurisdiction to entertain this action, because Allright had not paid its 1977 ad valorem taxes on the property prior to filing suit. The court also ruled that the plaintiffs' attacks on the constitutionality of Code Ann. § 92-6413 were not raised in a timely fashion. Accordingly, the complaint was dismissed by the trial court.

In Case No. 34961, the plaintiffs appeal the trial court's ruling that their failure to comply with Code Ann. § 92-6413 deprived it of jurisdiction in this case. In Case No. 34998, the defendants cross appeal the trial court's ruling that Allright's interest in the property is a nontaxable usufruct. *Held:*

1. At the outset, it is necessary to undertake a rather exhaustive review of the material provisions of the 1976 amendment to the lease:

Allright's interest in the property is reduced from 73

years to 35 years, with provision for earlier termination. (Section 2). Allright, as tenant, agrees with MARTA, as landlord, that it, Allright, will not have the full use of the premises during the construction, operation, and maintenance of MARTA's rapid transit system, as well as other "public projects." Throughout the term of the lease, the landlord shall have "sole discretion" to determine those portions of the premises, "if any," which the tenant shall be entitled to use and occupy during any period of time. In order to preclude the tenant's use and occupancy of a portion of the premises, the landlord is required to give the tenant at least 30 days' prior notice. (Section 2a, b, c). The premises shall be used by the tenant only for purposes related to tenant's "parking business or any other legitimate business purpose." (Section 3e).

Section 4a provides, "Notwithstanding any provision of the Existing Lease to the contrary, it is acknowledged and agreed that, upon execution of this Agreement, Tenant's interest in the Premises shall be only a usufruct . . ., that no estate in or title to the Premises shall under any circumstances vest in Tenant by virtue of this Agreement, and that Tenant shall upon even date herewith, by separate instrument . . . convey to and release in favor of Landlord any estate in or title to the Premises presently vested in Tenant by virtue of the Existing Lease. It is the intent of Landlord and Tenant that this Agreement gives Tenant a usufruct and not an estate for years."

The tenant agrees to pay the landlord a rental equal to 50% of the tenant's monthly gross receipts from any and all uses of the premises. (Section 5). The landlord is not required to make any repairs or improvements to the premises, to maintain the premises, or to incur any expenses in connection therewith. (Section 5b). The tenant is required to pay all utilities supplied to the premises in connection with the tenant's use of the premises. (Section 6). The tenant agrees to pay "all personal property taxes and all governmental charges of any nature whatsoever, general or special, ordinary or extraordinary, which may be levied or assessed upon, or which may become a lien upon the Premises or Tenant's rights to occupy the Premises . . ." (Section 7).

Section 8 provides: "Landlord shall have no obligation whatsoever for any real property ad valorem taxes levied upon the Premises for the year 1976 or preceding years. It is the belief of the parties that neither party will be liable for any property ad valorem taxes in the year 1977 or succeeding years throughout the Term. However, with respect to any real property ad valorem taxes levied upon the Premises for the year 1977 or succeeding years throughout the Term, if said taxes are assessed upon the Premises, Tenant shall have the duty to appeal said assessment to the Joint City-County Board of Tax Assessors; and if the relief sought by Tenant is not granted by said Board, Tenant shall have the duty to further appeal said assessment to a court of competent jurisdiction. At this point in the litigation, if both parties determine that taking appellate action from the final judgment of the Superior Court will be in their best interests, then both parties will share in the preparation of brief and argument. Each party will pay its own attorney's fees. Landlord shall, to the extent permitted by law, have the right to intervene in any administrative or judicial proceedings concerning such taxability of the Premises, which intervention shall not be opposed or contested by Tenant. Tenant shall have the duty to give Landlord written notice of said proceedings. If said real property ad valorem taxes are found to be due and owing the State of Georgia, the County of Fulton, or the City of Atlanta for 1977 or succeeding years throughout the term, then Landlord and Tenant shall each pay fifty percent (50%) of the real property ad valorem taxes levied upon the Premises . . . for 1977 or succeeding years throughout the Term . . ."

The landlord is not required to make any repairs or alterations to the premises or in any manner to supply maintenance for any portion of the premises. (Section 12). The tenant shall erect no improvements upon the premises without the landlord's prior written approval, which approval shall not be unreasonably withheld. (Section 13). The tenant agrees to procure, maintain, and pay for insurance on the premises to protect MARTA's liability and to insure the property in MARTA's name against all reasonable and insurable risks. (Section 17).

The tenant shall, at its own expense, keep and maintain the premises in "good and sanitary order, condition, and repair." (Section 29). Damage to or destruction of any improvements on or within the premises does not authorize the tenant to terminate the lease. (Section 32a).

During construction on the premises, the tenant is required to carry workers' compensation insurance in an amount necessary to protect landlord and tenant from all liability. (Section 34). If the tenant is not in default of any of its obligations under the lease, the tenant then can mortgage or encumber its interest as security for any debt, the proceeds of which are used to directly increase the value of the premises. (Section 35). Under Section 13, the tenant must obtain the landlord's approval before erecting any improvement on the property, and any improvement so erected shall upon completion become part of the premises, title to vest in the landlord.

The tenant shall have the right to sublet all or a portion of the premises to a subtenant, and the tenant shall have the right to assign or transfer any or all of its rights under the lease, provided that the written consent of the landlord is first obtained. (Section 42). The landlord may declare a default upon the appointment of a receiver to take possession of all or substantially all of the assets of the tenant, a general assignment by the tenant for the benefit of creditors, or any action taken or suffered by the tenant under any insolvency, bankruptcy, or any other debtor relief act. (Section 43).

2. As stated by the appellants, this case presents two primary questions for our consideration — a substantive question and a procedural one. The threshold question we have to address is the procedural one: Did the plaintiffs' failure to comply with Code Ann. § 92-6413, by paying their 1977 taxes based on their 1976 assessment prior to filing suit, deprive the superior court of jurisdiction in this case? If this question is answered in the affirmative, the case is at an end.

The appellants make a rather strong argument that since Allright's interest in the property as of January 1, 1977, was of such a different nature than its interest in the property in 1976, Code Ann. § 92-6413 would not require

it to pay its 1977 taxes based on the 1976 assessment as a condition precedent to filing suit in 1977. The appellants cite the language of Code Ann. § 92-6413 requiring payment of the amount of ad valorem property taxes assessed against the "property at issue" for the last year for which taxes were finally determined to be due on such property. The appellants argue that the "property at issue" in this case is not the same property on which Allright was taxed in 1976. " 'The term [property] comprehends not only the thing possessed, but also, in strict legal parlance, means the rights of the owner in relation to land or a thing; the right of a person to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from the use.' 18 AmJur. 787, § 156." *Woodside v. City of Atlanta,* 214 Ga. 75, 83 (103 SE2d 108) (1958).

Assuming, without deciding, that Code Ann. § 92-6413 is applicable in this case, we hold that Allright's failure to pay its 1977 taxes based on the 1976 assessment prior to filing suit was a jurisdictional defect which had been cured by the time the defendants' motion to dismiss for lack of jurisdiction was filed. Therefore, the trial court erred in dismissing the complaint on this jurisdictional ground.

3. Now we reach the substantive question in this appeal: Is Allright's interest in the subject property a nontaxable usufruct or a taxable estate for years?

The most recent explication by this court of the distinctions between an estate for years and a usufruct is found in *Camp v. Delta Airlines,* 232 Ga. 37, 38 (205 SE2d 194) (1974):

"What is a usufruct? Code § 61-101 provides that: 'When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, which he may not convey except by the landlord's consent and which is not subject to levy and sale; and all renting or leasing of such real estate for a period of time less than five years shall be held to convey only the right to possess and

enjoy such real estate, and to pass no estate out of the landlord, and to give only the usufruct, unless the contrary shall be agreed upon by the parties to the contract and so stated therein.' A different relationship exists under an estate for years. The Code states that, 'An estate for years is one which is limited in its duration to a period fixed or which may be made fixed and certain. If it is in lands, it passes as realty. It may be for any number of years, provided the limitation is within the rule against perpetuities.' Code § 85-101. See also Code § 85-803.

"An estate for years is a taxable estate. *Delta Air Lines v. Coleman,* 219 Ga. 12 (131 SE2d 768). On the other hand, a mere usufruct, sometimes referred to as a license to use, is not a taxable estate. *Whitehead v. Kennedy,* 206 Ga. 760 (58 SE2d 832). Briefly stated, the reason a usufruct is not considered to be a taxable estate is because the fee estate in the property remains with the lessor and is undisturbed by the agreement for the lessee to use the property. A leading case dealing with whether a particular agreement creates a usufruct or an estate for years is *Warehouses, Inc. v. Wetherbee,* 203 Ga. 483 (46 SE2d 894). As in the construction of all agreements, the cardinal rule to be used by the court is that the terms of the instrument itself must be scrutinized to ascertain what interest the parties intended to be conveyed or demised by it. See, also, *Hutcheson v. Hodnett,* 115 Ga. 990 (42 SE 422) (1902).

"We note that, under the provisions of Code § 61-101, where the term of the lease is less than five years a rebuttable presumption arises that only a usufruct is created by the instrument. A concomitant presumption, recognized by this court in *Warehouses, Inc. v. Wetherbee,* supra, is that where the term of the lease is for more than five years, there is a presumption that an estate for years is created by the agreement of the parties. In each instance, the agreement involved must be carefully searched for the intention of the parties." 232 Ga. at pp. 38-39.

Thus the lease between Allright and MARTA, being for a term of 35 years, presumptively creates an estate for years. Do the terms of the lease rebut this presumption and establish that the parties intended only a usufruct?

Of course, if the present case merely involved a private dispute between the parties themselves, the statements in Section 4 of the lease, that it is the intention of the parties that Allright is granted only a usufruct and no estate in the property, would in all likelihood be controlling. However, this is a tax dispute between Allright and the governing authorities of Fulton County and the City of Atlanta. Therefore, the provisions of the lease must be scrutinized objectively to determine whether the legal effect of the agreement between Allright and MARTA is to give Allright a usufruct or an estate for years.

Answering this question is made more difficult by reason of the fact that various sections of the lease are indicative of the grant of an estate for years, whereas other sections of the lease are characteristic of the grant of a usufruct only.

For instance, under Sections 5b and 12 of the lease, the landlord is not required to repair or maintain the premises; and under Section 29, the tenant is required to keep the premises in "good and sanitary order, condition and repair." Under Section 7, the tenant pays all taxes and governmental charges of any nature whatsoever against the premises. Under Section 17, the tenant is required to maintain insurance on the premises at its own expense. The foregoing sections of the lease are indicative of the grant of an estate for years to Allright. See *Delta Air Lines v. Coleman,* 219 Ga. 12, supra; *Johnson v. Brice,* 151 Ga. 472 (107 SE 338) (1921); *Wilson Mfg. Co. v. Chamberlin-Johnson,* 140 Ga. 593 (79 SE 465) (1913); *Buoy v. Chatham County Bd. of Tax Assessors,* 142 Ga. App. 172 (235 SE2d 556) (1977).

However, under Section 3 of the lease, the landlord is given "sole discretion" to determine those portions of the premises "if any" which Allright is entitled to use and occupy during the construction and operation of MARTA and other "public projects." Under Section 13, Allright is prohibited from erecting any improvements on the property without the landlord's prior approval. Section 42 prevents Allright from subletting or assigning its interest in the property without the landlord's approval. These sections of the lease are indicative of the grant of a

usufruct. See *Henson v. Airways Service, Inc.*, 220 Ga. 44 (136 SE2d 747) (1964); *Southern Airways Co. v. DeKalb County,* 216 Ga. 358 (116 SE2d 602) (1960); *Collier v. Hyatt,* 110 Ga. 317 (35 SE 271) (1900); *Evans Theater Corp. v. DeGive Investment Co.,* 79 Ga. App. 62 (52 SE2d 655) (1949); *Midtown Chain Hotels Co. v. Bender,* 77 Ga. App. 723 (49 SE2d 779) (1948).

In our opinion, the restrictions imposed upon Allright's use of the premises under Section 3 of the lease are so pervasive as to be fundamentally inconsistent with the concept of an estate for years. Under this section of the lease, MARTA, in its sole discretion, can preclude Allright from using any and all portions of the property during the construction and operation of MARTA and other "public projects." "An estate for years carries with it the right to use in as absolute a manner as a greater estate. . ." Code § 85-803. Thus, Allright had only a circumscribed and limited use of the premises characteristic of a usufruct. Cf. *Camp v. Delta Airlines,* 232 Ga. 37, supra; *Henson v. Airways Service, Inc.,* 220 Ga. 44, supra; *Southern Airways Co. v. DeKalb County,* 216 Ga. 358, supra.

Therefore, the judgment of the trial court is reversed insofar as it rules that the complaint must be dismissed for lack of jurisdiction under Code Ann. § 92-6413. The judgment is affirmed insofar as it rules that Allright's interest in the property is a nontaxable usufruct.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

ARGUED JUNE 11, 1979 — DECIDED SEPTEMBER 7, 1979 — REHEARING DENIED SEPTEMBER 27, 1979

*Alston, Miller & Gaines, Conley Ingram, Benjamin T. White, Kutak, Rock & Huie, Jay J. Levin, Charles N. Pursley, Jr.,* for appellants (Case No. 34961).

*Webb, Young, Daniel & Murphy, Thomas L. Murphy, Robert O. McCloud, Jr., Harold L. Daniel, Jr., Ferrin Y. Mathews, James Barnett, Charles Barnwell, Arthur K. Bolton, Attorney General, Gerald W. Bowling,*

*Assistant Attorney General,* for appellees (Case No. 34961).

*Thomas L. Murphy, Robert O. McCloud, Jr., Ferrin Y. Mathews, James Barnett,* for appellants (Case No. 34998).

*Conley Ingram, Benjamin T. White, Jay J. Levin, Charles N. Pursley, Jr., Arthur K. Bolton, Attorney General, Gerald W. Bowling, James C. Pratt, Assistant Attorneys General,* for appellees (Case No. 34998).