38413, 38443. ROBERTS et al. v. RAVENWOOD CHURCH OF WICCA; and vice versa.

MARSHALL, Justice.

This case involves an ad valorem tax dispute between the taxing authorities of Fulton County and a church whose members are commonly referred to as witches and warlocks. Drawn into question are issues concerning the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The superior court entered final judgment against the taxing authorities. For reasons which follow, we affirm this judgment.

1. Ravenwood Church of Wicca filed a petition for equitable and injunctive relief against the Fulton County Tax Commissioner and the Joint City-County Board of Tax Assessors. In the petition, Ravenwood maintains that it has been wrongfully denied an ad valorem tax exemption on a dwelling on Moreland Avenue, which is owned by Ravenwood and used by it for religious worship. Ravenwood argues that this property is exempt from ad valorem taxation under Code Ann. § 91A-1102 (a)(2) (Ga. L. 1978, pp. 309, 385, as amended), which exempts all "places of religious worship" from ad valorem property taxation.

Ravenwood, which is organized as a nonprofit corporation, is a church practicing the Wiccan faith. The founder and organizer of Ravenwood is known as Lady Sintana. In a deposition given by her, she gave the following uncontradicted and unrebutted testimony:

The Wiccan faith is a matriarchal religion which originated in Europe. In this faith, there is a belief in a deity, but not in the sense of an anthropomorphic God. Rather, the Wiccan belief is that there is a primordial, supernatural force which is the creator of the world and universe and which permeates everything therein. In the Wiccan faith, there is a deification of this force, and all individuals are seen as divine sparks from this divinity with a concomitant moral and ethical

responsibility to themselves and to everything in nature. This responsibility arises from the fact that each individual is connected to all things in the universe in what is known as the "karmic circle," and each individual both causes the events occurring within the circle and is affected thereby.

Adherents to the Wiccan faith do not practice the stereotypical "double, double toil and trouble" witchcraft, and Voodoo-like curses and hexes play no part in the Wiccan philosophy. The Wiccan church is not Christian, but it does believe in the teachings of Christ. It does not believe in the devil.

In the Wiccan faith, there are eight Sabbaths per year, which are major festivals celebrating changes of seasons. These include: Yule, Vernal Equinox, Beltane, Summer Solstice, Michelmas, and Lamas. The sacraments and ceremonies of the Wiccan doctrinal theology include: honoring the deity through reverence and homage, communion, marriages (referred to as "hand fastings"), funeral ceremonies, and ceremonies for naming babies.

As previously stated, Lady Sintana testified that she is the founder of Ravenwood. She also testified that she went through approximately 10 years of training to become an ordained minister of the Wiccan faith. She performs marriages which she says are recognized in the State of Georgia, and she gives college lectures on minority religion. In addition, she testified that Ravenwood Church of Wicca has been declared a tax-exempt, nonprofit corporation by the Internal Revenue Service on the ground that it is a church.

The Moreland Avenue property consists of a two-story dwelling, with eight or nine rooms. Three of these rooms are used as bedrooms. Lady Sintana lives in one of these rooms, and students of the Wiccan religion live in the other rooms. They pledge a certain amount of their income as rent, and this is used to defray such expenses as the mortgage on the property. Lady Sintana supervises and/or conducts weekly religious services and other religious activities at the Moreland Avenue dwelling.

2. The superior court ruled that the activities conducted by Ravenwood at the Moreland Avenue property do constitute "religious worship." The superior court also ruled that the Moreland Avenue property is used extensively and predominantly for religious worship. However, the court further ruled that the Moreland Avenue property is not entitled to an ad valorem tax exemption, because some of the rooms are rented out as residences and, therefore, are used for income-producing purposes. In arriving at this latter ruling, the superior court held that under *Columbus, Ga., by Bd. of Tax Assessors v. Outreach for Christ, Inc.,* 241 Ga. 2 (243 SE2d 42) (1978), property must be used exclusively for religious worship in order to

qualify for a tax exemption.

Ravenwood then submitted affidavits from officials of other churches in Fulton County, stating that their churches have been granted tax exemptions even though they allow nonreligious groups to use church property. Based on this, the superior court ruled that the taxing authority's denial of a tax exemption to Ravenwood constituted a denial of equal protection. Accordingly, final judgment was entered in favor of Ravenwood.

In Case No. 38413, the taxing authorities appeal the superior court's rulings that the activities conducted by Ravenwood constitute religious worship and that Ravenwood has been denied equal protection by denial of the tax exemption. In Case No. 38443, Ravenwood appeals the ruling that the Moreland Avenue property is not entitled to a tax exemption because it is not used exclusively for religious worship.

3. There is no authoritative definition of the words "place of religious worship" under the law of Georgia; however, these words do import a concept of a congregation assembling in a place open to the public to honor a deity through reverence and homage. *Leggett v. Macon Baptist Assn.,* 232 Ga. 27 (205 SE2d 197) (1974). "For the Christian Church Universal, this would include saying prayers, singing hymns, reading scriptures, and the giving of testimonies and sermons in a congregational setting. It would also include the traditional sacraments and rites of baptism, marriage, communion and funeral services." *Leggett v. Macon Baptist Assn.,* 232 Ga. 27, supra, at p. 31.

"[A]ny judicial analysis of a religion is a sensitive and perilous undertaking where it is addressed to the relationship of Church and State. For this reason, courts are loath to inquire into the merits or truth of any set of purportedly religious beliefs. We too will not trespass in this area.

"Courts can and will, however, examine such beliefs to determine whether they exhibit the minimum requirements of a religion. [Cits.] The statement of Justice Hughes in his dissent in United States v. Macintosh, 283 U. S. 605, 633-634, 51 S. Ct. 570, 578-579, 75 L. Ed. 1302, has emerged as a basic guide: 'The essence of religion is belief in a relation to God involving duties superior to those arising from any human relation.'

"The definition has been applied liberally, particularly in our modern age when new and unorthodox religious societies and organizations have appeared. Unorthodoxy will not serve to disqualify a religious group from tax exemption, as long as the group holds a sincere and meaningful belief in God occupying in the life of its possessors a place parallel to that occupied by God in traditional

religions, and dedicates itself to the practice of that belief (United States v. Seeger, 380 U. S. 163, 165, 85 S. Ct. 850, 853, 13 L. Ed. 2d 733)." Holy Spirit Assn. for Unification of World Christianity v. Tax Commission of City of N. Y., 438 NYS2d 521, 526 (App. Div. 1981).

As stated by Judge Seiler in his concurring opinion in Missouri Church of Scientology v. State Tax Commission, 560 SW2d 837, 845-846 (Mo. 1978), "We should be careful not to do anything to restrict religious freedom . . ., but if it is necessary to define religious worship or religion, . . . we should [not] restrict the definition to conventional orthodox religions . . . History shows that what is orthodoxy today was once heresy."

As we have previously stated, the evidence concerning the activities conducted by Ravenwood at the Moreland Avenue dwelling has not been contradicted. Employing the foregoing criteria to this evidence, we must hold that the activities conducted by Ravenwood do constitute religious worship.

4. A review of the Georgia cases shows that whether property qualifies for a tax exemption as a place of religious worship is determined by looking to the primary use of the property.

"We . . . draw from [*Church of God v. City of Dalton,* 216 Ga. 659 (119 SE2d 11) (1961)] the general rule that, in applying the exemption authorized by basic Georgia law to the facts in the individual case, we must look to the use of the property, not merely its ownership, and we must also look to the primary use of the property to determine whether it is exempt from taxation." *Leggett v. Macon Baptist Assn.,* supra, 232 Ga. at p. 28. This holding was reiterated in *Roberts v. Atlanta Baptist Assn.,* 240 Ga. 503, 506 (241 SE2d 224) (1978).

The language employed in *Columbus, Ga., by Bd. of Tax Assessors v. Outreach for Christ, Inc.,* supra, is disapproved to the extent that it suggests that property must be used exclusively, rather than primarily, for religious worship in order to qualify for the tax exemption.

5. We therefore hold that the Moreland Avenue property is entitled to the tax exemption, because, as found by the trial court, it is used by Ravenwood primarily as a place of religious worship.[1] Given

---

[1] It could be argued that the subject property is used exclusively as a place of religious worship on the ground that those people who are residing on the property are studying the Wiccan religion.

However, it does appear that where property is used primarily but not exclusively as a place of religious worship, only that portion of the property used for religious worship is tax exempt. See *Peachtree on Peachtree Inn v. Camp,* 120 Ga. App. 403 (170 SE2d 709) (1969).

this disposition of the case, we find it unnecessary to reach the equal-protection question.

Accordingly, the judgment in Case No. 38413 is affirmed to the extent that the superior court ruled that the activities conducted by Ravenwood constitute religious worship. The judgment in Case No. 38413 is vacated to the extent that the superior court ruled that Ravenwood has been denied equal protection by denial of the tax exemption. In Case No. 38443, the superior court ruled that the Moreland Avenue property is not entitled to a tax exemption because the property is not used exclusively for religious worship, and the judgment in this case is reversed.

*Affirmed in part, reversed in part, and vacated in part. All the Justices concur, except Jordan, C. J., and Clarke, J., who dissent, and Weltner, J., who is disqualified.*

DECIDED APRIL 6, 1982 —<br>REHEARING DENIED APRIL 30, 1982.

*Webb, Daniel & Betts, Harold T. Daniel, Jr., Donald B. Deloach,* for appellants.

*Maddox & Walsh, Thomas E. Maddox, Jr.,* for appellee.

JORDAN, Chief Justice, dissenting.

In my opinion the activities conducted by the appellee Ravenwood do not constitute "religious worship." Such activities do not come within the intended ambit of the exemption which exempts all "places of religious worship" from ad valorem taxation.

In defining religion, the majority opinion adopts the basic guide stated by Justice Hughes: "The essence of religion is belief in a relation to God involving duties superior to those arising from any human relation." In my opinion the Wiccan faith does not meet this test. Lady Sintana, the founder of Ravenwood, refers to herself as "a pagan and a witch." Male followers are called "warlocks." Each individual is connected to everything in the universe by what is known as the "karmic circle." There is no belief in a deity in the sense of an anthropomorphic God, only a belief in some strange supernatural force which permeates the world.

Under that nebulous premise, there could be as many "places of religious worship" as there are homes or tents where humans meditate on the mysteries of life. It would certainly include places in which Satanic cults worship a supernatural evil force which dominates the world. I do not believe that such cults or beliefs qualify as a religion under the meaning of that term as understood by our

founding fathers when they drafted the Constitution of the State of Georgia "relying upon the protection and guidance of Almighty God." God has been defined as "the Being perfect in power, wisdom and goodness whom men worship as creator and ruler of the universe." Webster's Seventh New Collegiate Dictionary.

While the majority opinion states that the Wiccan church does not believe in the devil, I do not believe it conforms to the traditional concept of a religion as embraced in the preamble of our State Constitution and as expressed in the Pledge of Allegiance to the flag of the United States. This nation was founded "under God," not the "karmic circle."

I would reverse the judgment in Case No. 38413 and affirm the judgment in Case No. 38443.

I am authorized to state that Justice Clarke concurs in this dissent.

### Addendum
### On Motion for Rehearing.

The taxing authorities have filed a motion for rehearing in this case.

1. In the motion for rehearing, they argue, among other things, that Ravenwood's receipt of rental income on some of the rooms in the Moreland Avenue dwelling destroys its character as a place of religious worship.

As authority, they cite two decisions which have not been heretofore cited: *Atlanta Masonic Temple Co. v. City of Atlanta,* 162 Ga. 244 (7) (133 SE 864) (1926) and *Trustees Academy of Richmond County v. Bohler,* 80 Ga. 159 (7 SE 633) (1887). However, our reading of *Masonic Temple* and *Bohler* actually bolsters our conclusion that the tax exemption is not lost where, as here, the trial court has found that a building is used primarily as a place of religious worship with some rooms in the building being rented out to students of the religion and with the rent being used to defray such expenses as the mortgage on the property. Under these circumstances, there is no "element of profit" in the receipt of rent, and the element of income is "altogether secondary and incidental." *Trustees Academy of Richmond County v. Bohler,* 80 Ga., supra, at p. 163. Nor are the rooms being rented out for a "business purpose." *Atlanta Masonic Temple Co. v. City of Atlanta,* 162 Ga., supra, at p. 245. As held in *Peachtree on Peachtree Inn v. Camp,* 120 Ga. App. 403 (170 SE2d 709) (1969), see n. 1, supra, the fact that residents are charged a rental toward expenses of operating a charitable institution does not destroy the charitable nature of the institution. Nor should it destroy

the religious nature of an otherwise religious institution.

In addition, both *Peachtree on Peachtree Inn v. Camp,* supra, and *Massenburg v. Grand Lodge F. & A. M. of State of Ga.,* 81 Ga. 212 (7 SE 636) (1888), recognize that where only a portion of a building is used for a tax-exempt purpose, the comparative value of the portion used for the tax-exempt purpose should be distinguished from the remainder, with only that part used for the tax-exempt purpose being spared taxation.

2. The taxing authorities also argue that our decision exposes the subject tax exemption to the possibility of practically unlimited abuse.

In responding to this argument, it is first necessary to dispel the dissent's suggestion that under the majority opinion, places of religious worship are practically unlimited and would include places in which Satanic cults worship a supernatural evil force.

Under the majority opinion, demonology and stereotypical witchcraft most emphatically do not constitute religion. As we stated in the majority opinion, the minimum requirements of religion are (1) a sincere and meaningful belief in God occupying in the life of its possessors a place parallel to that occupied by God in traditional religions, and (2) a dedication to the practice of that belief. Thus, in order to constitute a religion, there is the requirement that there be a belief in a deity occupying a place parallel to that occupied by God in traditional religions. However, this is not to say that under the legal definition of religion, only traditional religions qualify. In determining that the legal definition of religion should not be circumscribed in this manner, one need look no further than the guarantee of freedom of religion contained in the First Amendment to the United States Constitution.

*Motion for rehearing denied. All the Justices concur, except Jordan, C. J., and Clarke, J., who dissent.*