## 40042. JOHNSON et al. v. SOUTHERN GREEK HOUSING CORPORATION.

HILL, Chief Justice.

This is a property tax case. The Bulloch County Tax Commissioner sought to tax the property of Southern Greek Housing Corp. (SGHC), a charitable, nonprofit corporation formed at Georgia Southern College to provide housing and meeting rooms for its 23 fraternities and sororities. SGHC sued to enjoin the levy and collection of such taxes, and the trial court granted the injunction, holding that the property was being used for educational purposes and was tax exempt. The Tax Commissioner and Board of Tax Assessors appeal.

Georgia Southern College is a branch of the University System of Georgia, governed by the Board of Regents. In 1966, fraternities and sororities began to form on the Georgia Southern campus in Statesboro, and according to the testimony of the Dean of Students, began to flourish there by 1968. During a 7-year moratorium on housing for these organizations, the problem of finding meeting places for these groups became critical for university personnel. In addition, once the 7 years had passed, fraternities and sororities obtained off campus housing which created community relations

problems in residential areas not zoned for such uses. Furthermore, university officials realized that having off campus locations inhibited, rather than aided, the educational objectives which made these organizations desirable to the university.[1]

Therefore, President Dale Lick conceived the idea of forming a corporation to develop a plan for providing the school's 23 fraternities and sororities with housing.[2] Thus, SGHC was formed by university officials as a charitable, nonprofit corporation with no shareholders and having as its trustees the school's Dean of Students and a representative from each of the fraternities and sororities.

The trial court made the following findings of fact: SGHC is a nonprofit corporation, tax exempt under Internal Revenue Code, Section 501(c)(3), said exemption being granted for educational purposes. The corporation owns a tract of land surrounded on three sides by the Georgia Southern campus. According to its charter and the recorded protective covenants on this tract of land, SGHC is an arm and extension of the College and cannot exist outside of its purpose of supplementing the educational processes at Georgia Southern College.[3] The property owned by SGHC would be used to provide lodging for approximately 320 students of Georgia Southern College, would provide eating facilities which are not inconsistent with the existing meal plan implemented by Georgia Southern College, would provide meeting, library and recreational facilities, and would provide an athletic and recreational field which field will be open to all students of Georgia Southern College. The conduct of the students occupying the property, and the use of the facilities and the sanctioning of the affairs that take place on the property, are all supervised and regulated by rules and regulations of Georgia Southern College.[4] The evidence as a whole is consistent and undisputed that the use of the property is a part of the broad educational processes of Georgia Southern College and could not

---

[1] Promoting a sense of belonging, group unity, school spirit and loyalty, all of which furthered individual identification with the college, were among the goals cited by university officials.

[2] President Lick testified that 25% of the men and 20% of the women on campus belong to these organizations, percentages well above the national averages.

[3] The taxing authorities argue that the covenants can be amended. If and when such amendments are made, a different factual situation will be presented.

[4] The taxing authorities dispute this finding, arguing that the College's supervision and regulation applies only to individual students, not the facilities used by and affairs conducted by students. The trial court was authorized to find that by direct control of individual students, the College indirectly controls their use of the facilities and the affairs conducted therein. Moreover, findings of fact by the trial court will not be set aside unless clearly erroneous. OCGA § 9-11-52 (a) (Code Ann. § 81A-152).

produce profit or income which would benefit any one person or organization.[5]

1. OCGA § 48-5-41 (Code Ann. § 91A-1102) provides: "(a) The following property shall be exempt from all ad valorem property taxes in this state: . . . (6) All buildings erected for and used as a college, incorporated academy, or other seminary of learning; . . ." The following provisos, however, are also part of the statute: "(b) The exemptions provided for in this Code section which refer to colleges... shall only apply to those colleges . . . which are open to the general public.

"(c) The property exempted by this Code section... shall not be used for the purpose of producing private or corporate profit and income distributable to shareholders in corporations owning such property or to other owners of property, and any income from such property shall be used exclusively for . . . educational . . . purposes . . . and for the purpose of maintaining and operating such . . . educational . . . institutions.

"(d) This Code section . . . shall not apply to real estate or buildings which are rented, leased, or otherwise used for the primary purpose of securing an income thereon and shall not apply to real estate or buildings which are not used for the operation of . . . educational . . . institutions."

In *Mu Beta Chapter House Corp. v. Davison,* 192 Ga. 124 (14 SE2d 744) (1941), this court addressed the question whether a fraternity, as a charitable institution, was exempt from ad valorem taxation under the provisions of OCGA § 48-5-41 (Code Ann. § 91A-1102). Pointing out that the test is not the charitable purposes of the organization owning the property, but the actual use of the property by the institution that is determinative, id. at p. 126, the court held that its use as a residence exclusively for fraternity members did not qualify the property for ad valorem tax exemption as a charitable institution.

*State v. Davison,* 198 Ga. 27 (31 SE2d 225) (1944), involved the Sigma Nu fraternity house located on the campus of the University of Georgia. There, the property was owned by the Board of Regents, but was leased to the fraternity for 99 years. Since enough indicia of ownership resided in the fraternity, it was found to have an estate for years, which was subject to taxation, although property of the Board of Regents would not have been. In neither of these cases was the contention made that the property was being used for educational

---

[5] Any profit made by SGHC is to be placed in a scholarship fund.

purposes and thus was exempt for that reason.

In *Elder v. Trustees of Atlanta University,* 194 Ga. 716 (22 SE2d 515) (1942), on the other hand, homes owned by Atlanta University and provided rent free to faculty members were held exempt from ad valorem taxation under the statute as "buildings erected for and used as a college." Emphasizing that the houses were used for more than residential purposes in that faculty members living there were required to supervise conduct in nearby dormitories and often held faculty student conferences there, the court found that the homes served to promote the college's educational objectives and were tax exempt.

Similarly, in *Alford v. Emory University,* 216 Ga. 391 (116 SE2d 596) (1960), the efforts of the DeKalb Tax Commissioner to tax the fraternity houses at Emory University, a private educational and charitable institution, were denied by this court's holding that the fraternity houses, used for student housing and meals, located in the midst of the Emory campus, were "buildings erected for and used as a college" and thus were tax exempt. In that case, the fee ownership of the property remained in Emory, while the houses were built and run by the local fraternity chapters on a contract basis with the University. Thus, it is clear, at least where the university owns the property, that residential buildings may be "used as a college" and qualify for ad valorem tax exemption under OCGA § 48-5-41 (a) (6) (Code Ann. § 91A-1102). *Elder* and *Alford,* supra.

Like Emory University, SGHC is a charitable, nonprofit corporation. SGHC performs an educational function in conjunction with and under the auspices of Georgia Southern College. We find that the fact that the property in issue is not titled in the name of the College is not sufficient to remove this case from *Alford v. Emory University,* supra. We therefore conclude that fraternity and sorority houses on SGHC property are "buildings erected for and used as a college" and that such buildings are used for the operation of an educational institution within the meaning of OCGA § 48-5-41 (a) (6) and (d) (Code Ann. § 91A-1102).

There is no merit to the taxing authority's complaint that the fraternities and sororities are exclusive and "not open to the general public" as provided in OCGA § 48-5-41 (b) (Code Ann. § 91A-1102). At most colleges there are groups not open to all students (e.g., athletic teams, bands, singing groups, etc.). That facilities used by such groups and other specialized facilities (e.g., nuclear laboratories, power generation plants, etc.) are not open to all students does not render such facilities taxable. The college is clearly one open to the public and this corporation, like other groups on campus, was formed to meet general needs of the institution as a whole; that it directly

benefits some students more than others does not run counter to this proviso.

Nor do we find that the corporation is subject to ad valorem taxation under OCGA § 48-5-41 (c) (Code Ann. § 91A-1102) requiring that no profit or income be generated by the property for the private gain of shareholders. It is clearly structured without shareholders and any extra earnings over maintenance of the property will go into a scholarship fund.

Thus, we hold that SGHC's property in issue here is exempt from ad valorem taxation under OCGA § 48-5-41 (6) (Code Ann. § 91A-1102). *Alford v. Emory University,* supra, 216 Ga. 391; *Elder v. Trustees of Atlanta University,* supra, 194 Ga. 716.

2. There was no error in allowing the university to introduce into evidence exhibits 8 through 13, the declarations of principles and creeds of several of its fraternities and sororities, and exhibit 4, the restrictive covenants binding the subject property.

The decision of the trial court is not incorrect for any reason assigned.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., Smith and Weltner, JJ., who dissent.*

DECIDED OCTOBER 5, 1983 —
REHEARING DENIED OCTOBER 25, 1983.

*William J. Neville, Reba J. Neville,* for appellants.
*Johnston & Brannen, Sam L. Brannen,* for appellee.

WELTNER, Justice, dissenting.

In recent years, the rulings of this Court (in some of which I joined) have required taxing authorities to grant tax-free status for the following:

(1) A house used by a coven of witches for the worship of a deity called Wicca. *Roberts v. Ravenwood Church of Wicca,* 249 Ga. 348 (292 SE2d 657) (1982).

(2) A major hotel in downtown Atlanta, acquired through foreclosure by a retirement system, which now can compete — tax-free — with all the other hotels. *Teachers' Retirement System of Ga. v. City of Atlanta,* 249 Ga. 196 (288 SE2d 200) (1982).

(3) Wooded tracts of land owned by churches, used on occasion for woodland strolls and sylvan devotionals. *Tax Assessors v. Outreach for Christ, Inc.,* 241 Ga 2 (243 SE2d 42) (1978); *Roberts v. Atlanta Baptist Assn.,* 240 Ga. 503 (241 SE2d 224) (1978).

(4) Long-term leasehold interests of private, for-profit corporations whose businesses are located on lands purchased with

public funds. *McMillan v. Jacobs,* 249 Ga. 117 (288 SE2d 211) (1982); *Allright Parking of Ga. v. Tax Assessors,* 244 Ga. 378 (260 SE2d 315) (1979).

(5) Business income derived from sale of products physically delivered to purchasers within this state, upon the premise of ultimate out-of-state destinations. *Strickland v. Patcraft Mills,* 251 Ga. 43 (302 SE2d 544) (1983).

Now, the majority has seen fit to extend the gift of tax freedom to privately-owned buildings which are nothing more than social clubs for college students, whose functions and frolics are to be subsidized by the merchants and farmers and freeholders of Bulloch County, Georgia.

(See Anno. 66 ALR2d 904: "With few exceptions the courts have held that college fraternities and sororities are not exempt from taxation, because they exist primarily for the convenience of their members, and are mainly concerned with providing them with board, lodging, and recreation, while any educational, charitable, and benevolent purposes are of secondary importance.")

What is to prevent any entrepreneur (who can easily arrange to be grossly overpaid by the "non-profit" entity which he controls) from claiming exemption for any enterprise which runs roughly parallel to the broad aims of "a college?" Bookstores, laundries, fast-food places, clothing stores, rooming houses, theaters, car repair shops, and video arcades — all of these can help meet the concerns of educational institutions that students be literate, clean, well-fed, decently housed, wholesomely entertained, and assured of needed transportation and good hand-and-eye coordination.

"It is a cardinal rule in the construction of grants by the public that nothing passes by implication; that statutes under which special privileges, amongst which is exemption from taxation, are claimed by a corporation, will be strictly construed in favor of the public, and the exemption will not be held to be conferred unless the terms of the grant clearly and distinctly show that such was the intention of the Legislature." *City of Macon v. Central R. &c. Co.,* 50 Ga. 620, 621 (1874).

The exemption of "places of religious worship," OCGA § 48-5-41 (a)(2) (Code Ann. § 91A-1102), illustrates the boundless range of absurdities spawned by a departure from this "cardinal rule." Small wonder that courts have encountered a profusion of new religions, e.g., Theriault v. Carlson, 339 FSupp. 375 (N.D. Ga. 1972), where every dwelling house is a sanctuary, and every householder a minister — hence tax-free.

Who can define "religious worship?" History preserves from antiquity a plethora of sacred rites, which include prostration before

the solar deity, anointing the body with oils, immersion in consecrated waters, burnt offering and libation, sacral music and dance. Are these things "religious worship?"

Or are they but poolside cook-outs?

I cannot deny that ownership by a non-profit private corporation is but one step removed from ownership by a privately-endowed university, as in *Alford v. Emory University,* 216 Ga. 391 (116 SE2d 596) (1960). In my opinion the taking of today's step, while regrettable, is not so grave as is the adherence to the rule announced in *Alford,* which is bad policy and bad law. "The rule of *stare decisis* is a wholesome one, but should not be used to sanctify and perpetuate error in so short a term [of] years, without very weighty reasons in behalf of public policy." *City of Atlanta v. First Presbyterian Church,* 86 Ga. 730, 732 (13 SE 252) (1890).

Putting aside all cavil over school control, motive, exclusionary practices, and meager residential use, it is *wrong* that ordinary citizens must be forced to subsidize private clubs.

And no amount of precedential recitation or logical extension can obscure so plain a truth.

It is wrong.

I am authorized to state that Justice Smith joins in this dissent.