66008. LOCKHART v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant, Carlton Lockhart, appeals his conviction for possession of more than one ounce of marijuana — a violation of the Georgia Controlled Substances Act.

On June 17, 1982, Officer Don Woodyard, of the Troup County Sheriff's Department applied for a search warrant to search the premises of the defendant Lockhart. In his affidavit, Woodyard stated that a "reliable informant" who had in the past given him information which led to the arrest and conviction of other persons, told him that on June 14, 1982, he had bought untaxpaid whiskey from Lockhart in his home. While the informant was there "he saw

marijuana sold by Carlton Lockhart to other people . . ." Woodyard applied for and received a search warrant to search defendant's house for "untaxed Paid [sic] whiskey."

The police attempted to gain entrance to the Lockhart residence by asking to purchase whiskey. They were refused entrance by Mrs. Lockhart. Woodyard then divided his vice squad into two groups and he and Lieutenant Hunt knocked on the front door until Mrs. Lockhart answered and they served the search warrant on her. The defendant was in the bedroom. He and Mrs. Lockhart were taken to the living room while the search took place. Lt. Hunt had with him his "narcotics detector dog." Woodyard informed Mrs. Lockhart "that we was [sic] there to search her premises for un-taxpaid whiskey." Hunt testified he was "in charge of the narcotics dog . . . My job is to take the dog in and do a room search of the premises with the narcotics detector dog." Both the "narcotics dog" and Hunt had received special training in narcotics detection. Lt. Hunt has "also been to a school and [has] a state and federal narcotics license." He gave the "narcotics dog" the command to "search." The dog alerted on the commode in the bathroom and 31 bags of marijuana were found in a "ziplock" bag in the water reservoir. Another officer found one small bag of marijuana in the defendant's bedroom in a chest of drawers. The defendant was advised of his Miranda rights and asked if the marijuana was his. He shook his head. His wife was asked if it was hers. She also denied that it was hers. The officer then told them that both were under arrest. Lockhart then stated that the marijuana belonged to him. The officers did not find any untaxpaid whiskey. Defendant's motion to suppress was denied and he brings this appeal.
*Held:*

The defendant enumerates as error the use of the dog in the execution of the search warrant. We agree that the use of the dog was not authorized and reverse.

The "reliable informant" advised Officer Woodyard of Lockhart's sale of untaxpaid whiskey and marijuana, but Woodyard sought a search warrant *only* to search for "untaxed Paid [sic] whiskey." He did not ask for permission to search for marijuana, nor was the warrant's subject authorization broad enough to cover a search for marijuana. The magistrate was neither advised in writing nor orally that the police desired to search for marijuana. Also, the officers testified that they did not ask for or secure permission to use a "narcotics dog." The officer in control of the dog qualified the dog only as an expert in a search for narcotics and he gave the dog the command to "search" — presumably for the marijuana the informant stated he had seen.

We find fault with the procedure followed by the police for three

reasons: (1) Our State and Federal Constitutions require that a search warrant shall "particularly describ[e] the . . . things to be seized," (Art. I, § I, Par. 10, Ga. Const. (1976) (Code Ann. § 2-110); Fourth Amendment, U. S. Const.), (2) A search in execution of a warrant may not exceed in scope the particular article or things to be seized (Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889)), and (3) for the "plain view" exception to the warrant requirement to be invoked, the sighting of the contraband not specified in the warrant must have been "inadvertent." Coolidge v. New Hampshire, 403 U. S. 443, 469 (91 SC 2022, 29 LE2d 564).

(1) "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what may be taken, nothing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U. S. 192, 196 (48 SC 74, 72 LE 231). "In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude . . ." Stanford v. Texas, 379 U. S. 476, 485 (85 SC 506, 13 LE2d 431). Thus, although the affiant may have stated sufficient probable cause for issuance of a search warrant for untaxpaid whiskey *and* marijuana, the officer asked for and was issued a warrant which authorized a search *only* for "untaxed Paid [sic] whiskey." There was no judicial authorization for a search for marijuana. General exploratory warrants are of course void. Andresen v. Maryland, 427 U. S. 463, 480 (96 SC 2737, 49 LE2d 627). And, by definition, a general warrant is one which does not sufficiently specify the person, place, or thing to be searched. *Willis v. State,* 122 Ga. App. 455, 457 (177 SE2d 487); Andresen v. Maryland, 427 U. S. 463, 480, supra. In the instant case the officers searched specifically for marijuana with a "narcotics dog" and marijuana was not specified in the search warrant as an authorized subject of the search.

(2) "[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope . . . The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible . . . [E]vidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation." Terry v. Ohio, 392 U. S. 1, 18, 19, 29 (88 SC 1868, 20 LE2d 889). The scope of the authorized search in the instant case was for untaxpaid whiskey. The actual scope of the search in the execution of the warrant was for untaxpaid whiskey *and* marijuana. There was no other purpose for the "narcotics dog" than

to search for marijuana — and, the officer directed the dog "to search" which resulted in the discovery and seizure of the marijuana.

A lawful search is limited to that which is described in the warrant. *Jones v. State,* 126 Ga. App. 841, 844 (192 SE2d 171). A search warrant may not be used as a means to gain access to a person's house for the purpose of securing other evidence against him. Gouled v. United States, 255 U. S. 298, 309 (41 SC 261, 65 LE 647). The warrant shall particularly describe the things to be seized and the search must be limited to that matter described. Lo-Ji Sales, Inc. v. New York, 442 U. S. 319, 326 (99 SC 2319, 60 LE2d 920). The authorized search may not be expanded to a more extensive search by the executing officers. Id. at 326. In the instant case the search was expanded by the executing officers, without judicial authorization, to search for marijuana with the "narcotics dog."

(3) The State argues that the marijuana "found during a lawful search, although not set out in the search warrant, may be seized if the officer is searching an area that may reasonably be searched for the items listed in the search warrant." "There must be a bona fide search for the item sought to be found, but if, in the course of an authorized search, another contraband is found on the party or premises searched, the officer is authorized to seize it, for the search, though not productive of that which was sought, was legal." *Reynolds v. State,* 142 Ga. App. 549 (1) (236 SE2d 525). "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U. S. 234, 236 (88 SC 992, 19 LE2d 1067). "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came *inadvertently* across a piece of evidence incriminating the accused." Coolidge v. New Hampshire, 403 U. S. 443, 466 (91 SC 2022, 29 LE2d 564). (Emphasis supplied.) In the present case, the officer did not *inadvertently* come across this marijuana. He was specifically searching for marijuana he expected would be present.

This court has discussed the inadvertency requirement of Coolidge in *State v. Scott,* 159 Ga. App. 869 (2) (285 SE2d 599). There, we found that "inadvertency" does not mean "unexpected," and that " '(t)he expectation that such evidence will be discovered does not preclude operation of the plain view exception to the warrant requirement.' [Cits.]" Id. However, Coolidge's requirements did apply where the police had "*probable cause* in advance of the search to expect to find the evidence which they subsequently seize[d]." Id. at 871. Accordingly, "where the investigating police 'did not "know" in advance that they would find the additional (evidence)

in plain view and that, in the absence of this knowledge, their discovery was inadvertent . . . For the government to be charged with advance knowledge, *it must* at the very least *have had probable cause* to believe that the additional (evidence) would be found . . . Mere *expectation or suspicion* that discovery would occur *does not preclude application of the plain view doctrine.*' " (Emphasis in original.) Id. at 871. In this case, the same evidence that established probable cause for the search for untaxpaid whiskey also established probable cause for the search for marijuana. If there was no probable cause for the search for untaxpaid whiskey the entire search was void. If there was probable cause for search of the whiskey and the marijuana, the finding of the marijuana "in plain view" where the officer had a right to search for untaxpaid whiskey, was not inadvertent, and Coolidge proscribes its admission in evidence.

(4) Although defendant objects to the use of "the narcotics dog" per se, this objection is not well founded. The exclusionary rule cannot be invoked to exclude the product of a legitimate police investigative technique. Terry v. Ohio, 392 U. S. 1, 13, supra. Use of a dog, especially trained to detect marijuana and narcotics, is an authorized investigative technique. Cf. *Bothwell v. State,* 163 Ga. App. 261, 262 (293 SE2d 720). Accord, United States v. Bronstein, 521 F2d 459 (2d Cir. 1975), U. S. cert. den. 424 U. S. 918; United States v. Solis, 536 F2d 880 (9th Cir. 1976); see generally 31 ALRFed 931.

*Judgment reversed. Sognier and Pope, JJ., concur.*

Decided May 6, 1983.

*Murray M. Silver,* for appellant.
*Arthur E. Mallory III, District Attorney, Anita F. Smith, Assistant District Attorney,* for appellee.