72142. HUNT et al. v. THE STATE.
(348 SE2d 467)

BEASLEY, Judge.

Defendants Larry David Kirkman, Linda Kierce, Robert Hunt, and his wife Mary were convicted by a jury of child molestation (OCGA § 16-6-4) in that they made "sexual contact of a provoking nature one with another while undressed and exposing their sexual organs in the presence of (the Hunts' then 4-year-old daughter) . . . with the intent to satisfy (their) sexual desires. . . ." Robert Hunt was also convicted of a second count of child molestation. The charges stem from a Wicca religious ceremony involving witchcraft and nudity. The motion for new trial was denied and defendants appeal.

1. The first claimed error is the court's overruling of defendants'

motion to suppress the evidence seized pursuant to a search warrant executed at the home following their arrest. They contend that their Fourth Amendment rights were violated because the search exceeded the scope of what was called for in the warrant and that even what was called for in the warrant was not described with sufficient particularity.

The search warrant authorized a search of the house for the following items as evidence of the crime of child molestation: "Articles of clothing worn during a ceremony involving child molestation, namely: gown with an upside down star embroidered on it; material used as an alter (sic) for the ceremony; incense and candles used during the ceremony; books or manuals used or referred to for said ceremony which are evidence of the ceremony of child molestation occurring once a month during the new moon."

The court granted the motion in part, limiting admissible items to those described in the warrant. At trial the state introduced into evidence a robe with an embroidered pentagram, or upside down star, a witchcraft prayer book allegedly used during religious ceremonies, and a painting which had hung over a large chest of drawers described as the altar. The painting depicted a blond woman and a pentagram.

The items not suppressed should have fallen, appellants argue, because they were not particularly described in the search warrant, as required by *Marron v. United States*, 275 U. S. 192, 196 (48 SC 74, 72 LE 231) (1927), insofar as the Fourth Amendment goes, and as required by OCGA § 17-5-23. The state statute contains the same "particular description" language as in the Fourth Amendment, and appellants do not contend that a different degree of particularity is mandated by the state statute. Nor do we address that point, as it was not raised.

We note, however, that somewhat of a distinction has been made between the federal constitution's requirement of particularity and that mandated by the state constitution, now Ga. Const. 1983, Art. I, Sec. I, Par. XIII. In *Lockhart v. State*, 166 Ga. App. 555, 557 (305 SE2d 22) (1983), the state and federal constitutional provisions were being applied conjointly for the proposition that "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude . . .," quoting from *Stanford v. Texas*, 379 U. S. 476, 485 (85 SC 506, 13 LE2d 431) (1965). A complete quote from *Stanford*, in context, would show that the Supreme Court there was referring to books when the basis for their seizure is the ideas they contain, and thus First Amendment considerations also moderated. Our court in *Lockhart* did not give this narrower coverage but adopted the "scrupulous exactitude" language for all warrants, thus presumably so construing

the state constitution. Appellants are not claiming a violation of state constitutional law rights. Of course the state could not afford less protection. *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983); *State v. Camp*, 175 Ga. App. 591, 593 (1) (333 SE2d 896) (1985).

Comparing what was specified in the warrant with what was not suppressed but admitted in evidence at trial, the warrant manifests a sufficient degree of particularity so that the officers would know what they were searching for. Analogizing what is to be seized with what is to be searched, " '[t]he test for the sufficiency of . . . description is whether ". . . on its face it enables a prudent officer executing the warrant to locate [it] definitely and with reasonable certainty." ' " *State v. Hardin*, 174 Ga. App. 83 (329 SE2d 172) (1985). "The warrant must describe the items to be seized with such particularity as to enable a prudent officer executing the warrant to seize the things with 'reasonable certainty.' " *Tyler v. State*, 176 Ga. App. 96, 97 (1) (335 SE2d 691) (1985).

Appellants have not argued separately that the painting did not fall within the language of the search warrant, apparently conceding that it is covered by the "material used as an altar for the ceremony" category. "(W)hen circumstances make an exact description of instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking. [Cits.]" *Evans v. State*, 161 Ga. App. 468, 470 (1) (288 SE2d 726) (1982); *Butler v. State*, 130 Ga. App. 469, 473 (203 SE2d 558) (1973); *Tyler*, supra at 97. These state cases apply federal constitutional law.

Appellants especially complain about the book, asserting that *Stanford v. Texas*, 379 U. S. 476, 485, supra, requires "the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." But as pointed out in *Stanford*, this is because the First Amendment is involved when what is to be prosecuted is the ideas in the books. Such is not the case here, where the book was merely being used as evidence that such ceremonies had occurred. The ideas set forth in the book were not the subject of the prosecution. The Court in *Stanford* recognized the distinction: "A 'book' which is no more than a ledger of an unlawful enterprise thus might stand on a quite different constitutional footing from the books involved in the present case. . . ." Id. at 485, note 16. Nevertheless, the books to be seized were described with circumspection so as to relate to a narrow type of material that would be relevant proof and contribute to a showing that child molestation had been committed. And that is all that survived the motion to suppress insofar as writings were concerned.

Apparently appellants also contend that *all* of the evidence seized should have been suppressed since some was found to have

been beyond the scope of the warrant. However, no authority is cited for this suggestion of total eclipse, and we know of none. Where some of the evidence is seized unlawfully and some in compliance with a non-"general" warrant's commands, that which was lawfully seized need not be suppressed. *Andresen v. Maryland*, 427 U. S. 463, 478-484 (3) (96 SC 2737, 49 LE2d 627) (1976). The remedy under state law would be return of the illegally seized items and suppression of that which was seized by an illegal execution of the warrant. OCGA § 17-5-30. This would include only the unlawfully seized items. See *Dugan v. State*, 130 Ga. App. 527, 534-535 (3) (203 SE2d 722) (1974), which applies both federal and state constitutional law in this regard without distinction.

2. Next enumerated is that the character of defendants Robert Hunt and Larry Kirkman was improperly placed in issue by a state witness who testified that he had met both defendants while they were in jail.

Upon the testimony at issue, the defense moved for a mistrial. The court overruled the motion, instructing that it would "change the ruling unless a proper foundation is laid by this or some other witness to show the time frame in which this occurred so that the chance that this jury might reach some other conclusion, other than the fact that these people are in jail because they could not make bond, is the reason they are in it." The state then called a sheriff to the stand who testified that the four defendants had never been incarcerated in the jail on any charges other than those for which they were presently on trial. The defense renewed its motion for mistrial, and the motion was again denied.

The challenged testimony did not place defendants' character in issue as it is clear from a review of the transcript that their incarceration related only to those charges for which they were then on trial and not due to any independent criminal transactions. *Latham v. State*, 100 Ga. App. 509, 510 (2) (112 SE2d 163) (1959); *Hughes v. State*, 159 Ga. App. 591 (3) (284 SE2d 98) (1981). Cf. *Bowen v. State*, 123 Ga. App. 670, 671 (1) (182 SE2d 134) (1971). The denial of the motion for mistrial on this ground was proper.

3. Defendants assert error in the denial of their motion for mistrial based upon "an inflammatory and prejudicial argument," a reference to the Liberation Army in the Patty Hearst case, by the state in closing argument and the court's failure to instruct the jury to disregard the comment.

In *Jordan v. State*, 172 Ga. App. 496, 498 (323 SE2d 657) (1984), the court found no ground for reversal where the state in closing argument referred to "some cases that you just wouldn't hardly believe, a fellow up in Chicago that lived in the neighborhood for years, Gracy fellow, who would have ever thought that? This minister that was up

in Winchester or Manchester, Tennessee, several years ago, who would have ever thought that?," to suggest that those with outwardly impeccable moral character with strong moral and religious beliefs may be sex offenders. No curative instruction had been requested or given.

In *Forehand v. State*, 235 Ga. 295 (1) (219 SE2d 378) (1975), the Supreme Court held that the failure to instruct the jury to disregard the following closing remark was not error: "The State will contend . . . that [the shooting] was a cold calculated act . . . There is evidence by the testimony, is evidence by the wounds. Shot the man in the back of the head. I don't know if any of you recall seeing a television program several weeks ago on the Nazi extermination of the Jews. Do you recall how they shot the Jews?"

A comparison by the state in closing argument of the defendant and the Viet Cong, saying that defendant's possible return to society would be a greater damage than the threat of world communism and the Viet Cong, was held to be "a permissible inference from the evidence and its logic . . . for the jury to determine." *Martin v. State*, 223 Ga. 649, 650 (2) (157 SE2d 458) (1967).

The court in *Jordan*, supra at 498, explained: "A prosecutor ' "may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard." [Cit.] What the law forbids is the introduction into a case by way of argument of facts which are not in the record and are calculated to prejudice a party and render the trial unfair. The language used in argument may be extravagant; but figurative speech is a legitimate weapon in forensic warfare if there are facts admissible in evidence upon which it may be founded. [Cits.] We find the argument of which complaint is made well within permissible bounds. The prosecutor simply argued the evidence and reasonable inferences arising therefrom and asked the jury to return a verdict of guilty. This he may do.' [Cits.]" That applies here.

Finally, on this point, "The discretion conferred upon the trial court by OCGA § 17-8-75 to order a mistrial will not be interfered with on appeal unless manifestly abused, and we find no such abuse here." Id.

*Judgment affirmed. Deen, P. J., and Benham, J., concur. Deen, P. J., also concurs specially.*

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion, it should be observed that an assembly place for adherents of the Wicca "faith,"

qualified by the Supreme Court as a religion,[1] may be exempt from state taxation, *Roberts v. Ravenwood Church of Wicca*, 249 Ga. 348 (292 SE2d 657) (1982), but neither the place of Wicca "worship" nor the Wicca adherents are exempt from the criminal code of the State of Georgia. The defendants in this case got what they deserved: observance of all their due process rights but a conviction nonetheless.

DECIDED JULY 3, 1986.

*Larry B. Mims*, for appellants.
*David E. Perry, District Attorney*, for appellee.

---

[1] Defined now as including non-theistic religions as well as theistic religions in the case of *Torcaso v. Watkins*, 367 U.S. 488, 495, n. 11 (1961). (Beliefs in absence of, as well as existence of, a creator). While we are bound by the Georgia Supreme Court, the writer does not believe the U. S. or Georgia Constitutions mandate providing tax exemptions for non-theistic religions. Wicca witch-warlock worship was not within the original intent of the founding fathers. See Chief Justice Jordan's dissent in *Roberts v. Ravenwood Church of Wicca*, supra.