## 72106. LeGALLIENNE v. THE STATE.
(348 SE2d 471)

BEASLEY, Judge.

LeGallienne was convicted of child molestation (OCGA § 16-6-4) and aggravated sodomy (OCGA § 16-6-2).

1. The first two enumerations of error claim denial of effective assistance of counsel during both the guilt/innocence phase of trial and the sentencing, and thereby a denial of the right to a fair trial under the state and federal constitutions.

Appellant was sentenced on June 24, 1985. On July 7, trial counsel applied for sentence review and moved for a new trial based solely on the ground of newly discovered evidence. Prior to any ruling on the motion, counsel from the firm presently representing defendant filed a notice of appearance and a notice of appeal from the judgment on September 13. He first, in writing, tried to raise an issue of effective assistance of counsel by an amended motion for new trial filed on February 18, 1986. The court entered the following order on May 8: "Motion for New Trial, as amended, *having come before the Court on August 16, 1985*, and the same having been heard and considered, IT IS HEREBY ORDERED that said Motion for New Trial be denied." (Emphasis supplied.) It may be that the claim was *orally* added and ruled on when the original motion for new trial was heard and denied orally on August 16, 1985. Appellant then filed another notice of appeal on June 3 from his convictions and sentences and the denial of

---

his motion for new trial.

On June 18, defendant and the state filed a "Joint Motion for Appellate Consideration of Case" which stated that at the time of the filing of the first notice of appeal, present counsel was acting with the understanding that the motion for new trial had been denied, that a written order to that effect had unintentionally not been entered by the trial court, that appellant's initial filing was technically premature, and that after conference with the parties, the court entered the May 8 order denying the motion for new trial. The joint motion was not ruled on.

The substance of the court's May 8 order, that it flowed from the issues before the court on the August 16, 1985, hearing date gives some indication that the questions of lack of effective assistance of counsel were ruled on by the trial court, as it mentions the motion as amended. The brief of appellant below argued it, raising both constitutions. Since we cannot say with certainty from analysis of the present record that such issues were not considered by the trial court, we have reviewed the entire transcript in light of appellant's assertions of numerous instances of inadequate representation by counsel throughout the trial-in-chief and the alleged failure of trial counsel to offer mitigating circumstances during the sentencing phase.

With respect to the federal constitution, we must follow the "two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), in determining whether there has been actual ineffective assistance of counsel, thereby requiring the reversal of defendant's conviction. The defendant must show both that counsel's performance was deficient and that this deficiency prejudiced the defense. *Strickland v. Washington*, supra; *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985)." *Brogdon v. State*, 255 Ga. 64, 67 (3) (335 SE2d 383) (1985).[1]

To be found lacking, counsel's performance must first be shown to fall outside the range of " 'reasonably effective assistance,' " i.e., to make significant decisions in the case without the exercise of reasonable professional judgment. Reasonableness is determined from the totality of the circumstances viewed from counsel's perspective at the time of trial. Also there is the strong presumption that "counsel's conduct falls within the broad range of reasonable professional conduct."

Furthermore, as to the second prong of the test, the defendant must show actual prejudice from the inadequate performance, that is, "there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's unprofessional errors."

---

[1] The Georgia Supreme Court does not clarify whether it is there applying the federal standard to only a federal constitutional claim or whether it is also adopting the federal standard as a construction of Georgia's constitution.

Id. at 68.

Defendant has failed to satisfy the two-part test as to both the guilt/innocence phase and the sentencing phase of his trial.

With respect to the state constitutional claim under Art. I, Sec. I, Par. XIV, we find no separate test which would yield a different result. See *Oldham v. State*, 179 Ga. App. 730 (347 SE2d 698) (1986); *Brown v. State*, 179 Ga. App. 538 (346 SE2d 908) (1986).

2. Appellant maintains that the trial court erred by considering certain sua sponte evidence in aggravation during the pre-sentence hearing. No such objection was raised at the pre-sentence hearing and this issue is precluded from review. *O'Kelley v. State*, 175 Ga. App. 503, 509 (5) (333 SE2d 838) (1985).

3. LeGallienne next contends that the trial court erred in denying his motion for new trial, which was filed on July 22, 1985 and set for hearing on August 16.

The notice of appeal was filed on September 13 and recited that the appeal was "from the judgment of conviction and sentence entered herein on June 24, 1985 and the denial of his Motion for New Trial on August 16, 1985." Yet the record indicates that order overruling the motion was not filed until September 16, so the appeal as to the motion was technically premature. But even under these circumstances we have jurisdiction. *Gillen v. Bostick*, 234 Ga. 308 (1) (215 SE2d 676) (1975).

In the motion, brought solely under OCGA § 5-5-23, defendant alleged that the testimony of a state's witness that he had been sexually abused by defendant was critical in establishing the state's case, that the testimony became fatally suspect because the witness was subsequently declared mentally incompetent.

To begin with, there was no evidence in the record of any declaration of incompetency. Even if the witness was so found sometime after the trial, whether or not the condition prevailed during the time of trial does not appear. There was no challenge to the witness' mental state at the time of his testimony nor any indication that he was then incompetent. We cannot simply surmise that the witness lacked competency at trial.

Furthermore, " '[i]t is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' [Cits.] All six requirements must be complied with to secure a new

trial." *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

The burden was on LeGallienne to demonstrate to the court that these requirements were met, but the record is barren in this regard. It does show, however, that contrary to appellant's argument that the state's case "hinged" on the subject witness' testimony of sexual abuse committed by LeGallienne, such is not a reasonable characterization because there was direct testimony by the victim of acts of molestation and sodomy and there was corroborative testimony by an expert witness qualified in the clinical psychology of abused and neglected children.

" ' "Motions for new trial on the ground of newly discovered evidence are not favored and are addressed to the sole discretion of the trial judge, which will not be controlled unless abused." [Cit.] "Unless it is reasonably apparent from the record that the alleged newly discovered evidence will likely produce a different verdict upon another trial, a motion for new trial based upon that ground should not be granted. . . ." ' [Cits.] *Blankenship v. State*, 162 Ga. App. 538, 539 (292 SE2d 123) (1982).

We find no abuse of the trial court's discretion in denying the motion for new trial based on the sole ground alleged.

4. Lastly, appellant urges that the offense of aggravated sodomy factually merged into the offense of child molestation, resulting in error in the imposition of a separate sentence for each offense.

This objection was not raised before the trial court and therefore is not properly before us. *O'Kelley v. State*, supra; see Division 2. Overlooking that impediment, however, the law is that "[o]ffenses merge as a matter of fact pursuant to OCGA § 16-1-6 (1) if one of them is established by proof of the same or less than all the facts required to prove the other." *Young v. State*, 177 Ga. App. 756, 757 (2) (341 SE2d 286) (1986). The evidence showed that such was not the situation here.

*Judgment affirmed. Deen, P. J., and Benham, J., concur. Deen, P. J., also concurs specially.*

Deen, Presiding Judge, concurring specially.

In this case, in order to pick up new boys for his sexual gratification (another type of sexual pedophilic "pied piper," see *Howell v. State*, 172 Ga. App. 805 (324 SE2d 754) (1984)), the appellant posed as general overseer or bishop of the world headquarters of the nonexistent Union Gospel Holiness Church of God, Inc. Justice Bleckley once observed that "[i]t is impossible to ignore the evils of intemperance or the blessings of religion." *Gilham & Brown v. Wells*, 64 Ga. 192, 194 (1879). He was referring to traditional theistic religion and values. Since that time, the definition of "religion" having been

stretched beyond recognition, it is fast becoming impossible to ignore some of the evils of religion, or rather doing whatever one cherishes or feels good about doing, but which conduct violates the criminal code under the guise of "religion." See, e.g., *Hunt v. State*, 180 Ga. App. 103 (348 SE2d 467) (1986), involving a conviction for child molestation stemming from a Wicca "religious" ceremony of witchcraft and nudity adding up to almost a sexual orgy involving little children. In *Hunt* while in the chapel all would pray to "the Mother Goddess" and to "Samhain, the lord of the dead . . . you give thanks for the blessings you got . . . and put cursing on your enemies and you call down spells on them." Then while naked ("Skyclad"), "we were all *required*, male and female, to touch one another on the breasts and on the male genitalia and to put that in our mouths." (Emphasis supplied.) There was "suckling and fondling" going on. During the religious ceremony the four-year-old was told that affirming these acts publicly would make her "feel good," which was followed by involuntarily manipulating and invading of her body.

While concurring fully with the majority opinion, it is also appropriate to concur specially so as to make these additional comments.

DECIDED JULY 3, 1986 —
REHEARING DENIED JULY 31, 1986 ▮

*John W. Lawson*, for appellant.

*Johnnie L. Caldwell, Jr.*, District Attorney, *J. David Fowler, Christopher C. Edwards, Paschal A. English, Jr.*, Assistant District Attorneys, for appellee.