A95A2580. GRANT v. THE STATE.
(469 SE2d 826)

POPE, Presiding Judge.

We granted Jeffrey Grant's interlocutory application to determine whether the trial court properly denied his motion to suppress. For the reasons set forth herein, we reverse in part.

On May 5, 1992, a search warrant issued for the search of the office of Georgia Southern Lumber, one of Grant's businesses. The search was executed the following day.

The warrant set forth that the laws being violated were OCGA §§ 16-8-2 (theft by taking) and 16-10-20 (false statements). It listed the things to be searched for as: "letters with landowners, timber companies or participants pertaining to the purchase or transfer of land or timber; warranty deeds; options on timber contracts for the purchase or transfer of timber; loan documents where land or timber was utilized as collateral; cancelled checks, check stubs and check ledgers for the period of 1983 to the present; weight tickets; settlement sheets; cruise reports (timber evaluations); tally sheets; location maps; promissory notes; purchase records for supplies from Davis Of-

fice Supplies. (See attached participant list.)"

Attached to the warrant was the eight-page affidavit of Georgia Bureau of Investigation ("GBI") special agent Roy Olinger, in which he stated that he was trained in white collar crime investigation. Olinger stated that he had been involved since 1989 with the investigation of a series of criminal schemes which had been perpetrated against Keadle Lumber Enterprises over several years. Olinger's affidavit stated that there had been a continuing pattern of criminal activity conducted by the "co-defendants" over the years. The affidavit described the types of documents ordinarily maintained in the timber industry; these documents basically conformed to the items sought in the warrant.

Also attached to the warrant was a seven-page list of "co-defendants," which set forth both businesses and individuals. Both Grant and his alleged businesses were listed in this section.

The final document attached to the warrant was Olinger's additional affidavit describing the investigation the GBI had undertaken with respect to Grant's involvement with the illegal activities. The affidavit stated that Grant had been the grantor of fictitious tracts of timber and that he had inflated acreage and payments based on inflated volumes of timber. The affidavit stated that Grant had prepared forged documents and provided them to Olinger for the purpose of concealing his criminal activity from 1983-1989. The affidavit then set forth various fraudulent transactions to which Grant had been a party.

In July 1992, three indictments from Henry County issued against Grant, charging him with five counts of forgery in the first degree and three counts of theft by deception for acts which occurred in August, September and October 1991. These indictments were nolle prossed in November 1992. On October 14, 1992, a Henry County grand jury issued two indictments against Grant charging him with three counts of forgery in the first degree and two counts of theft by deception. The second indictments were basically the same as the earlier indictments, although one of the indictments was dropped. After the Henry County indictments issued, Grant was one of numerous individuals indicted by an Upson County grand jury under the Georgia Racketeering Influenced and Corrupt Organizations Act (RICO), OCGA § 16-14-1 et seq.[1]

---

[1] This indictment and its predecessor have given rise to numerous appeals by individuals and corporations named in the indictments. See, e.g., *Raines v. State*, 219 Ga. App. 893 (467 SE2d 217) (1996); *Pope v. State*, 214 Ga. App. 458 (448 SE2d 54) (1994), aff'd 265 Ga. 473 (458 SE2d 115) (1995); *Fletcher v. State*, 213 Ga. App. 401 (445 SE2d 279) (1994); *State v. Adams*, 209 Ga. App. 141 (433 SE2d 355) (1993) (in which the trial court quashed the indictments and purported to grant the motion to suppress evidence obtained pursuant to improper grand jury subpoenas).

Grant filed a motion to suppress, arguing that the warrant was issued without probable cause and that it was overbroad. The court held a hearing on the motion at which agent Olinger testified that he had been investigating the criminal activity surrounding Keadle Lumber Enterprises since 1989; that he had previously conducted several interviews of Grant; and that on May 6, several simultaneous searches of key players involved in the alleged timber illegalities were conducted. Olinger testified that he was not involved in the search, but that he was aware that in addition to the files which contained items delineated on the warrant, the agents had seized Grant's tax returns, computer and accompanying discs, and data board. GBI agent Montgomery testified that Grant's phone messages and wall calendar were seized, and that papers regarding Grant's dealings with individuals other than the listed "co-defendants" were also taken. Montgomery testified that the search lasted from 1:00 p.m. to 9:00 p.m., and Grant testified that "everything that wasn't nailed down" was taken in the search. Grant also stated that the things seized included his personal note pad and personal phone book.

Olinger testified that documents which were seized and which were later deemed unnecessary would be returned to Grant. Olinger admitted that the agent executing the search had the discretion to determine what was within the warrant. He recalled that the agents executing the search were instructed to "research those files [listed in the warrant as part of the timber investigation] and if they ran across any of those files with those particular names of the other players [listed in the attachments to warrant] or *anyone else that they were familiar with that were involved in the timber industry investigation, to also seize that, yes.*"

In denying Grant's motion to suppress, the court stated that the "particular documents having to do with the Defendant and certain other suspect individuals listed in the affidavit were the only items authorized by the issuing judge to be seized. Testimony at the hearing, however, showed that not only were the items listed on the face of the warrant seized but also a number of other items." The court then concluded that because there was no "flagrant disregard" of the warrant, there was no general search requiring total suppression. The court stated: "it appears from evidence that the agent's extensive seizure of evidence resulted from practical considerations and time constraints." Accordingly, the court found that the State had satisfied its burden of proof with respect to the legality of the search. It then stated: "[o]ther items seized which were outside the scope of the warrant would be excluded if it were possible to specifically enumerate these items; however, the lack of detail in the State's inventory list, and the Defendant's failure to adequately present this information" prevented the court from excluding such documents.

1. Grant contends that the warrant was improperly executed in that the officers seized items not listed in the warrant. We agree. "A search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. The scope of the search must be strictly tied to and justified by the circumstances which rendered its initiation permissible. Evidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation." (Citations and punctuation omitted.) *Lockhart v. State*, 166 Ga. App. 555, 557 (2) (305 SE2d 22) (1983). "A lawful search is limited to that which is described in the warrant. . . . The warrant shall particularly describe the things to be seized and the search must be limited to that matter described." (Citations omitted.) Id. at 558.

This was not a situation in which additional contraband was seized during the search because it was in plain view. See generally *State v. Scott*, 159 Ga. App. 869 (285 SE2d 599) (1981). Moreover, the "[p]lain view doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (Citations and punctuation omitted.) *Hogan v. State*, 140 Ga. App. 716, 717-718 (1) (231 SE2d 802) (1976).

Here, the inventory list of the items seized and Olinger's testimony established that the scope of the search exceeded the warrant, and the court properly determined that the search was excessive. We find no legal support for the court's decision that practical considerations and time constraints justified the overly extensive search. Moreover, there is no factual support for this conclusion since many of the items seized which were outside the scope of the warrant (e.g., the computer, calendar) were unrelated to time constraints. Compare *Ledesma v. State*, 251 Ga. 885, 889-890 (7) (311 SE2d 427) (1984) (regarding "private papers" argument).

Similarly, the court erred in concluding that the motion should be denied because of the difficulty in enumerating the items improperly seized. Certainly, Grant should not be penalized for the lack of detail in the State's inventory list. Moreover, given that all of his files had been taken, Grant's practical difficulty in specifying the particular items taken which exceeded the scope of the warrant was apparent.

"When a motion to suppress is made on one of the three statutory grounds, challenging the validity of a search and seizure *with* a warrant, the burden of showing that the search and seizure were lawful shall be on the state." (Citation and punctuation omitted; emphasis in original.) *Bowman v. State*, 205 Ga. App. 347, 348 (422 SE2d 239) (1992). The State failed to show that the warrant was legally executed, and the court erred in not granting the motion in this re-

gard. See OCGA § 17-5-30 (b); see generally *State v. Slaughter*, 252 Ga. 435 (315 SE2d 865) (1984).

"The remedy under state law would be return of the illegally seized items and suppression of that which was seized by an illegal execution of the warrant. OCGA § 17-5-30. This would include only the unlawfully seized items." *Hunt v. State*, 180 Ga. App. 103 (1), 106 (348 SE2d 467) (1986); *Dobbins v. State*, 262 Ga. 161, 163 (3) (415 SE2d 168) (1992). Thus, we remand the case for determination by the court as to which items should be returned to Grant and suppressed.

2. In four more enumerations of error, Grant essentially contends that the warrant was overbroad and that the items to be seized were not described with sufficient particularity. Again, we agree.

OCGA § 17-5-21 provides that a search warrant may be issued for things or papers which are particularly described. OCGA § 17-5-21 (a) (1) states that a search warrant may issue for the seizure of "[a]ny instruments, articles, or things, including the private papers of any person, which are designed, intended for use, or which have been used in the commission of the offense in connection with which the warrant is issued."[2]

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what may be taken, nothing is left to the discretion of the officer executing the warrant. In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the things to be seized is to be accorded the most scrupulous exactitude." (Citations and punctuation omitted.) *Lockhart*, 166 Ga. App. at 557. "The test for the sufficiency of description is whether on its face it enables a prudent officer executing the warrant to locate [the item] definitely and with reasonable certainty." (Citation and punctuation omitted.) *Hunt v. State*, 180 Ga. App. at 105. Further, "when circumstances make an exact description of instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of the items he is seeking." (Citations and punctuation omitted.) Id.

"We recognize that there are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's papers that are not necessarily present in executing a warrant to search for physical objects whose relevance is more easily ascertainable. In searches

---

[2] Although not determinative, we are mindful that the alleged offenses here are theft by taking and false statements and that the breadth of the search is somewhat controlled by these crimes. For a discussion of the issue of subterfuge searches, see *United States v. Washington*, 797 F2d 1461 (9th Cir. 1986); 2 W. LaFave, Search and Seizure, pp. 183-184, § 4.11 (e).

for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. . . . [R]esponsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy." *Andresen v. Maryland*, 427 U. S. 463, 482, n. 11 (96 SC 2737, 2749, n. 11, 49 LE2d 627) (1976).

Here, if the items listed in the warrant are limited to those involving the named participants, the items were described with the requisite particularity. The determination of which documents fell within this rubric would have been a matter of fact, and would have been an appropriate determination for the searching officers to make. *Strauss v. Stynchcombe*, 224 Ga. 859, 863 (2), 866 (165 SE2d 302) (1968). However, because the warrant did not clearly limit the items to be seized to those involving the named participants, it was overly broad and allowed for an impermissible exercise of discretion by the searching officers. See generally Annotation, *Sufficiency of Description of Business Records under Fourth Amendment Requirement of Particularity in Federal Warrant Authorizing Search and Seizure*, 53 ALR Fed 679 (1981). Again, with the record before us, we are unable to determine which items were improperly seized, and we remand the case so that the court can make this determination.

3. Grant's contention that tapes obtained by a body bug should have been suppressed is without merit. See *State v. Birge*, 240 Ga. 501 (241 SE2d 213) (1978); OCGA § 16-11-66. Accordingly, the court properly denied the motion to suppress on this basis.

*Judgment affirmed in part, reversed in part and case remanded. Beasley, C. J., and Ruffin, J., concur.*

DECIDED MARCH 12, 1996.

*Cook & Palmour, Bobby Lee Cook, Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, George T. Smith*, for appellant.

*Tommy K. Floyd, District Attorney, Michael J. Bowers, Attorney General, Michael E. Hobbs, Senior Assistant Attorney General, Patrick D. Deering*, for appellee.