### A98A2409. WATSON et al. v. THE STATE.
(509 SE2d 87)

ELDRIDGE, Judge.

James G. Watson and Brenda F. Watson, husband and wife, appeal from a Muscogee County jury's verdict finding them guilty as parties to the crime of two counts of violation of the Georgia Racketeer Influenced & Corrupt Organizations Act ("RICO"), OCGA § 16-14-1 et seq., stemming from their joint operation of two businesses,

---

[2] This case applies former OCGA § 15-9-86.1 as it appeared prior to its 1998 amendments.

Jak's Pawn Shop and Check Cashers, in Columbus, Georgia.[1] We affirm their convictions.

As in many RICO actions, the record in this case is large, consisting of seven volumes of testimony and hundreds of pages of exhibits. Accordingly, we will address only those facts relevant to a resolution of the three enumerations of error raised on appeal.

In a light most favorable to the jury's verdict,[2] the pertinent evidence shows that the Watsons operated Jak's Pawn Shop, not as a pawnbrokerage, but as a small loan company in violation of the Georgia Industrial Loan Act, OCGA § 7-3-1 et seq., which closely regulates and licenses "the business of making loans of $3,000.00 or less[.]" OCGA § 7-3-2. Further, the Watsons used the State's criminal process as its collection agency on the loans.

In that regard, customers would obtain a cash loan and, contemporaneously, write Jak's Pawn Shop a check for the full loan amount plus a twenty percent fee, which fee was purportedly classified as one percent interest and 19 percent "storage fee."[3] The check was left as collateral for the loan. However, at the same time that the customer handed the Watsons the check for the loan, an item of nominal value, such as a jar of dirt or a Bic lighter, would also be given to the Watsons as "pledged goods" pursuant to the pawnbroker regulatory scheme. See OCGA § 44-12-130 (5).

Thereafter, the Watsons would hold the customer's check for four weeks, at which time the customer could either repay the loan and get the check back, or "renew" the loan for another four weeks by paying an additional twenty percent fee; this renewal process could be, and often was, repeated indefinitely.[4]

If the loan customer did not repay or renew the loan, the Watsons would deposit the customer's check in the bank. When the check

---

[1] In order to satisfy the requirements of OCGA § 16-14-3 (8), twenty-five predicate acts were named in support of the RICO violations: thirteen counts of perjury in connection with the swearing out of arrest warrants for the offense of "bad check"; one count of collection of extension of credit by extortionistic means, i.e., threats of violence; one count of first degree arson; one count of second degree arson; eight counts of false statements made in connection with the submission of pawnbroker reports pursuant to OCGA §§ 44-12-132; 44-12-133; and one count of unlawful possession of a firearm (dangerous weapon), i.e., a Steinmark II submachine gun. In addition, the Watsons were also indicted for two substantive counts of arson, first and second degree, for which counts they were found not guilty.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] The record shows that Jak's Pawn Shop had no merchandise to store so as to justify a "storage fee." Further, the Industrial Loan Act, OCGA § 7-3-14 (1), permits such a money lender, licensed under the Act, to charge an interest rate not exceeding ten percent. See also OCGA § 7-4-18 (a) authorizing a criminal penalty for charging excessive interest on money loans, i.e., interest in excess of five percent per month.

[4] Although the check was returned when a customer repaid the loan, the nominal "pledged goods" given at the time of the loan generally was not returned because it had no value.

was returned because of "insufficient funds" or "account closed," the Watsons would swear out a warrant for the customer's arrest pursuant to the bad check statute, OCGA § 16-9-20. The sworn affidavit in support of the arrest warrant for bad check alleged that the customer:

"[U]ttered and delivered to Jak's, a check in the amount of [dollar amount] for merchandise knowing that said check would not be honored by drawee [the bank]."

However, (1) Jak's Pawn Shop did not sell merchandise; (2) at the time the Watsons received the customer's check as collateral for the loan, it was understood by all parties that "said check would not be honored by drawee" because there was no money in the checking account: otherwise, "they wouldn't have to come in and get a loan"; and (3) at the time the Watsons received the check, "there was never any intention on Jak's to present the check to the bank"; the check would only be presented to the bank upon occurrence of a future act, i.e., the customer's failure to pay or renew.

Nevertheless, in order to avoid arrest and prosecution by the State for the offense of "bad check," the customer would go to the Columbus Government Center in order to pay the check amount, plus fines and court costs. *Held*:

1. The Watsons first challenge the trial court's denial of their motion for directed verdict.[5] They contend that the evidence was insufficient to demonstrate perjury in connection with the swearing out of arrest warrants for the offense of bad check because: (a) the checks were, in fact, bad checks since they were returned for insufficient funds or account closed; (b) there was no evidence of intent to give false testimony in swearing out the warrants since the checks were, in fact, bad checks; and (c) the State failed to meet its burden to call two witnesses to testify that the Watsons committed perjury, as allegedly required by OCGA § 24-4-8.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. *Cantrell v. State*, 230 Ga. App. 693, 694-695 (498 SE2d 90) (1998). "A motion for a directed verdict in a criminal case should only be granted when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. Moreover, on appeal the evidence must be viewed in the light most favorable to the verdict, [the Watsons] no longer enjoy[ ] the presumption of innocence, and the appellate court deter-

---

[5] Herein, the Watsons do not contest their status as "parties to the crimes" for which they were convicted, since they operated and controlled Jak's Pawn Shop, and its employees acted under their direction. See OCGA § 10-6-1. Accordingly, this enumeration of error is solely a challenge to the evidence in support of the substantive offenses.

mines the sufficiency, not the weight of the evidence, and does not judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve." (Citations omitted.) *White v. State*, 233 Ga. App. 24, 25-26 (503 SE2d 26) (1998).

(a) In essence, the Watsons' initial contention is that, since a check was "not honored by the drawee" as specified by the bad check statute, there can be no perjury in swearing out a warrant for that offense. We do not agree.

In pertinent part, "[a] person commits the offense of deposit account fraud when such person makes, draws, utters, executes, or delivers an instrument for the payment of money on any bank or other depository in exchange for a present consideration or wages, knowing that it will not be honored by the drawee." OCGA § 16-9-20 (a).

Accordingly, and contrary to the Watsons' assertions, whether or not a check ultimately is worthless when it is finally deposited misses the point. The offense of "bad check" occurs at time of the *issuance* of the check with knowledge that it will not be honored. *State v. Brannon*, 154 Ga. App. 285 (267 SE2d 888) (1980); *Russell v. State*, 155 Ga. App. 555 (271 SE2d 689) (1980).

Here, in order to obtain an arrest warrant, the Watsons swore that the customer uttered and delivered to Jak's a check for merchandise, knowing that the check would not be honored by the bank. Yet, the evidence shows that (1) the Watsons knew, at the time of its issuance, a check was not in exchange for merchandise; and (2) at the time of a check's issuance, the customer and the Watsons never intended for the check to be deposited and honored by the bank, rendering impossible the requisite knowledge/intent under the statute.

Moreover, at the time of its delivery to the Watsons, a check was not a "bad check" within the meaning of the statute, OCGA § 16-9-20 (a), because such check was not given in exchange for present consideration. "[T]he requisite of 'present consideration' may exist although goods or services are received before a check is delivered in payment, where the interval is slight and the exchange can be characterized as a *single contemporaneous transaction*." (Citations and punctuation omitted; emphasis supplied.) *McNeal v. State*, 204 Ga. App. 791 (420 SE2d 653) (1992).

In this case, accepting a check in exchange for money with the intent to hold the check until the money is paid back, or finally depositing the check in retaliation for the failure to pay the money back, negates the exchange as a "single contemporaneous transaction" and, thus, as one for "present consideration." As succinctly stated by the investigating officer, "the check itself is not totally for present consideration if it involved a future event taking place to determine whether, in fact, the check is to be negotiated as a check or

whether it's to be tossed in the trash."

(b) The Watsons maintain that the evidence was insufficient to demonstrate the requisite intent to give false testimony so as to support a perjury charge. We do not agree.

In pertinent part, "[a] person to whom a lawful oath or affirmation has been administered commits the offense of perjury when, in a judicial proceeding, he knowingly and willfully makes a false statement material to the issue or point in question." OCGA § 16-10-70 (a). A charge of perjury may be predicated on an affidavit made to procure issuance of an arrest warrant. *Williford v. State*, 53 Ga. App. 334 (185 SE 611) (1936); see also *Dee v. Sweet*, 218 Ga. App. 18, 21 (460 SE2d 110) (1995). "[I]t is a jury question as to whether or not the facts sufficiently prove the requisite intent and thus, perjury." (Citations and punctuation omitted.) *West v. State*, 228 Ga. App. 713, 716 (492 SE2d 576) (1997).

Here, based on the evidence recounted in Division 1 (a), as well as other evidence detailed in the statement of facts above, we find that a rational trier of fact could have found beyond a reasonable doubt that the affidavits in support of the arrest warrants for bad check contained false statements that were sworn to knowingly and willfully in order to force the customers of Jak's Pawn Shop to repay their loans. The evidence sufficiently shows that the Watsons knew the *checks* were not bad, the loans were.

(c) The Watsons contend that the State failed to meet its burden to call two witnesses to testify that the Watsons swore falsely and committed perjury, as allegedly required by OCGA § 24-4-8. However, this contention demonstrates a fundamental misunderstanding of the statute.

OCGA § 24-4-8 states that "[t]he testimony of a single witness is generally sufficient to establish a *fact*. However, in certain cases, including prosecutions for . . . perjury, . . . the testimony of a single witness is not sufficient." (Emphasis supplied.) Thus, in a prosecution for perjury, the two-witnesses rule outlined by the statute concerns fact witnesses. "[T]his rule applies only to proof of the *fact* alleged to have been falsely sworn to, and not to other ingredients which constitute the offense[.]" (Emphasis supplied.) *Bell v. State*, 5 Ga. App. 701, 703 (63 SE 860) (1909).

In that regard, the State called several employees of Jak's Pawn Shop to testify regarding the process of making small loans thinly disguised as "pawns," as recounted in the statement of facts above. These witnesses testified that, at the Watsons' direction, arrest warrants were obtained for the offense of bad check when the loans were not repaid in the agreed upon fashion, as recounted above. These witnesses testified as to the substance of the affidavits in support of the arrest warrants. The facts to which these witnesses testified were

corroborated by extensive testimony from customers of Jak's Pawn Shop who wrote checks as collateral for small loans and against whom arrest warrants were sworn out for the offense of bad check. In addition, hundreds of pages of documentary evidence corroborated the factual testimony of these witnesses, including arrest warrants, affidavits in support thereof, pawnbroker reports, and the checks, themselves.

Accordingly, the State amply complied with OCGA § 24-4-8 in the production of fact witnesses to testify regarding the facts alleged to have been falsely sworn to, i.e., the underlying acts the Watsons used as a basis to swear out the arrest warrants for the offense of bad check. Contrary to the assertions of the Watsons, the statute does not require the State to produce opinion witnesses to testify that the Watsons swore falsely and committed perjury. Such determination was solely a matter for the jury based on the evidence. *West v. State*, supra; *Bell v. State*, supra.

Enumeration of error number one is without merit.

2. The Watsons' second enumeration of error is that the trial court failed to charge OCGA § 24-4-8, even though such charge was not requested. Nevertheless, "[n]o such written request having been made below, there was no error." *Slaughter v. State*, 227 Ga. App. 739, 741 (2) (490 SE2d 399) (1997); see also *Johnson v. State*, 258 Ga. 506, 508 (5) (371 SE2d 396) (1988).

Even if requested, the Watsons failed to show how they were harmed by the failure to charge OCGA § 24-4-8, except to cite such failure as "some explanation for the wacky verdict in this case." However, we are not persuaded that "wackiness" is a sufficient description of harm to justify reversing a jury's verdict. "Harm as well as error must be shown to warrant a reversal." (Citations and punctuation omitted.) *Whitt v. State*, 215 Ga. App. 704, 710 (8) (452 SE2d 125) (1994). And considering the number of fact witnesses produced by the State as outlined in Division 1 (c), supra, the failure to charge OCGA § 24-4-8 cannot be considered a substantial error which was harmful as a matter of law. See OCGA § 5-5-24.

3. In their final enumeration of error, the Watsons contend that the trial court erred in denying their motion to suppress evidence gathered pursuant to search warrants issued for their residence and their businesses. The Watsons contend that (a) the warrants were improperly executed in that the officers seized items not listed in the warrants; and (b) the information contained in the warrants was insufficient to constitute probable cause for the warrants to issue. These contentions are meritless.

(a) "A lawful search is limited to that which is described in the warrant. The warrant shall particularly describe the things to be seized and the search must be limited to that matter described."

(Citations and punctuation omitted.) *Grant v. State*, 220 Ga. App. 604, 607 (469 SE2d 826) (1996). However, "when circumstances make an exact description of instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of the items he is seeking." (Citations and punctuation omitted.) Id. at 608 (2).

We have reviewed the warrants in this case, as well as the returns generated after the execution of the warrants. We find that the items seized did not exceed the scope of the warrant. Further, as they did at the motion to suppress, the Watsons have failed to identify any specific, seized item that was either unlisted or outside the scope of the warrant. Compare *Grant*, supra at 607 ("the inventory list of the items seized and [agent] Olinger's testimony established that the scope of the search exceeded the warrant[.]"). Further, the items listed in the warrant were limited to those involving named participants and businesses; thus, the items were described with the requisite particularity. Compare *Grant*, supra at 609. "The determination of which documents fell within this rubric would have been a matter of fact, and would have been an appropriate determination for the searching officers to make. [Cit.]" Id.

(b) The Watsons' challenge to the affidavit supporting the search warrant also fails. "[A] magistrate faced with an application for a search warrant must decide whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. We, in reviewing the magistrate's decision, must determine whether the magistrate had a substantial basis for concluding that probable cause existed to issue a search warrant." (Citations and punctuation omitted.) *Grier v. State*, 266 Ga. 170, 172 (2) (b) (465 SE2d 655) (1996). Here, the affidavit in support of the search warrant provides detailed information and corroboration regarding the unlawful practices of the Watsons in operating Jak's Pawn Shop and Check Cashers as unlicensed small loan companies, which practices were uncovered during a financial audit conducted pursuant to an initially unrelated arson investigation. Reviewing the record, we hold that the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrants. Id.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 6, 1998 —
RECONSIDERATION DENIED NOVEMBER 20, 1998 ▮▮▮▮▮▮▮▮▮

*Michael E. Garner*, for appellants.

*J. Gray Conger, District Attorney, Melvin E. Hyde, Jr., Assistant District Attorney*, for appellee.